IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

          v.

WESAM AL DELAEMA,
  also known as
   WESAM KHALAF CHAYED DELAEME,

          Defendant.

Criminal No. 05-337 (PLF)

:
:
:
:
:
:
:

## OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

# ATTACHMENT 1

**Amendments dated 27 May 1999 to the Code of Criminal Procedure in connection with the regulation of certain special powers of investigation and the amendment of certain other provisions (special investigative powers)**

We, Beatrix, by the grace of God, Queen of the Netherlands, Princess of Orange-Nassau, etc., etc., etc.

Greetings to all who shall see or hear this information being read! Be it known:
That We have considered it desirable to include in the Code of Criminal Procedure certain special powers of investigation and in that connection to amend certain other provisions;
We, therefore, having heard the Council of State, and in consultation with the States General, have approved and decreed as We hereby approve and decree:

### SECTION I

The Code of Criminal Procedure shall be amended as follows:

Part Six of Title IV of Book I shall be deleted.

After Title IV of Book I, Titles IVa, V, Va, Vb and Vc shall be inserted, reading as follows:

### TITLE IVA. SPECIAL POWERS OF INVESTIGATION

PART ONE. SURVEILLANCE

**Article 126g**

1. If it is suspected that an indictable offence has been committed, the public prosecutor may, in the interests of the investigation, order an investigating officer to follow a person or to observe his presence or behaviour on a systematic basis.

2. If the suspicions relate to an offence as defined in article 67, paragraph 1, which in view of its nature or connection with other offences committed by the suspect constitutes a serious breach of the legal order, the public prosecutor may, in the interests of the investigation, decide that in order to carry out the order referred to in paragraph 1, an enclosed place, not being a dwelling, may be entered without the permission of the title holder.

3. The public prosecutor may decide that in order to carry out the order referred to in paragraph 1, a technical device shall be used, provided it is not used to record confidential communications. No technical device shall be attached to a person without his permission.

4. The order shall be given for a period not exceeding three months and may be extended, on each occasion for a further three months.

5. A surveillance order shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the name or as accurate as possible a designation of the person referred to in paragraph 1;

d. if paragraph 2 is applied, the facts and circumstances demonstrating that the conditions set out in that paragraph have been fulfilled, and the place to be entered;

e. the way in which the order is to be executed, and

f. the period for which the order is valid.

6. In urgent cases the order may be given verbally. In such cases, the public prosecutor shall then put the order in writing within three days.

7. As soon as the conditions set out in paragraph 1 are no longer fulfilled, the public prosecutor shall terminate the implementation of the order.

8. The order may be amended, supplemented, extended or terminated in writing, with reasons being given. In urgent cases the decision may be given verbally. In such cases, the public prosecutor shall then put his decision in writing within three days.

9. An order as referred to in paragraph 1 may also be given to a person in the public service of another State. Certain requirements may be imposed on that person by order in council. Paragraphs 2 to 8 shall apply *mutatis mutandis*.

## PART TWO. INFILTRATION

### Article 126h

1. If it is suspected that an offence has been committed as defined in article 67, paragraph 1, which in view of its nature or connection with other offences committed by the suspect constitutes a serious breach of the legal order, the public prosecutor may, if this is urgently required in the interests of the investigation, order an investigating officer as referred to in article 141b, to join or assist a group of persons who can reasonably be suspected of planning or committing offences.

2. In carrying out the order referred to in paragraph 1, the investigating officer may not induce a person to commit an offence other than the one he was already intending to commit.

3. An infiltration order shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. a description of the group of persons;

c. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

d. the way in which the order is to be executed, including any activities which constitute an offence, insofar as this is possible to foresee at the time the order is issued, and

e. the period for which the order is valid.

4. An order as referred to in paragraph 1 may also be issued to:

a. a person in the public service of another State who complies with requirements laid down by order in council;

b. an investigating officer as referred to in article 142, provided the said officer is cooperating pursuant to section 11, subsection 2 of the 1993 Police Act with investigating officers as referred to in article 141 (b).

Paragraphs 2 and 3 shall apply *mutatis mutandis*.

5. Article 126g, paragraphs 7 and 8 shall apply *mutatis mutandis*, on the understanding that an infiltration order may not be extended verbally.

## PART THREE. PSEUDO PURCHASES AND PROVISION OF SERVICES

### Article 126i

1. If it is suspected that an offence as defined in article 67, paragraph 1 has been committed, the public prosecutor may, in the interests of the investigation, order an investigating officer to buy goods from or provide services to the suspect.

2. In carrying out the order referred to in paragraph 1, the investigating officer may not induce the suspect to commit an offence other than the one he was already intending to commit.

3. A pseudo purchase or provision of services order shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the nature of the goods or services;

d. the way in which the order is to be executed, including any activities which constitute an offence, and

e. the date on which or the period within which the order is to be executed.

4. An investigating officer as referred to in paragraph 1 shall also mean a person in the public service of another State who complies with requirements laid down by order in council.

5. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis*.

## PART FOUR. UNDER COVER SYSTEMATIC GATHERING OF INFORMATION

### Article 126j

1. If it is suspected that an indictable offence has been committed, the public prosecutor may, in the interests of the investigation, order an investigating officer as referred to in article 141(b) systematically to gather information on the suspect without it being known that he is acting in the capacity of investigating officer.

2. The order shall be valid for a period not exceeding three months and may be extended, on each occasion for a further three months.

3. An order to gather information shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the way in which the order is to be executed, and

d. the period for which the order is valid.

4. An order as referred to in paragraph 1 may also be issued to:

a. a person in the public service of another State who complies with requirements laid down by order in council;

b. an investigating officer as referred to in article 142, provided the said officer is cooperating pursuant to section 11, subsection 2 of the 1993 Police Act with investigating officers as referred to in article 141 (b).

Paragraphs 2 and 3 shall apply *mutatis mutandis*.

5. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis*.

## PART FIVE. POWERS TO ENTER ENCLOSED PLACES

### Article 126k

1. If it is suspected that an offence as defined in article 67, paragraph 1 has been committed, the public prosecutor may, in the interests of the investigation, order an investigating officer to enter an enclosed place, not being a dwelling, or to use a technical device, without the permission of the title holder, in order to:

a. examine the place in question;

b. secure evidence found there, or

c. to place a technical device there with a view to establishing the presence or transport of a particular object.

2. An order as referred to in paragraph 1 shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the place to which the order relates;

d. the way in which the order is to be executed, and

e. the date on which or the period within which the order is to be executed.

3. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis*.

PART SIX. RECORDING CONFIDENTIAL COMMUNICATIONS WITH A TECHNICAL DEVICE

**Article 126l**

1. If it is suspected that an offence has been committed as defined in article 67, paragraph 1, which in view of its nature or connection with other offences committed by the suspect constitutes a serious breach of the legal order, the public prosecutor may, if this is urgently required in the interests of the investigation, order an investigating officer as referred to in article 141(b) to record a confidential communication with the aid of a technical device.

2. In the interests of the investigation, the public prosecutor may decide that an enclosed place, not being a dwelling, shall be entered without the permission of the title holder, in order to carry out the order. He can determine, in order to carry out the order, that a dwelling shall be entered without the permission of the title holder, if the investigation urgently so requires and the suspicion involves a crime the legal description of which carries a prison sentence of eight years or more. Article 2, first paragraph, final sentence of the General Act on Entering is not applicable.

3. An order to record a confidential communication shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 and, in cases where the second sentence of the second paragraph are applicable, the conditions referred to in the second paragraph, have been fulfilled;

c. the name of at least one of the persons taking part in the communication, or, if the order relates to communication taking place in an enclosed place or vehicle, the name of one of the persons taking part in the communication or as accurate as possible a description of the place or the vehicle;

d. if paragraph 2 is applied, the place to be entered;

e. the way in which the order is to be executed, and

f. the period for which the order is valid.

4. An order as referred to in paragraph 1 may be given only after written authorisation has been obtained from the examining magistrate on the application of the public prosecutor. Such authorisation shall apply to all parts of the order. If a dwelling is to be entered in executing the order, then this needs to be expressly mentioned in the authorisation.

5. An order shall be given for a period not exceeding four weeks and may be extended, on each occasion for a further four weeks.

6. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis*, on the understanding that the public prosecutor requires authorisation from the examining magistrate for any change, addition or extension of the order. If the public prosecutor determines that a dwelling will be entered in executing the order, then the authorisation cannot be given verbally. As soon as the conditions referred to in the second sentence of the second paragraph are no longer fulfilled, public prosecutor shall determine that execution of the order is terminated.

7. In urgent cases, the authorisation of the examining magistrate referred to in paragraphs 4 and 6 may be given verbally. In such cases the examining magistrate shall then put the order in writing within three days.

8. An official report of the recordings shall be drawn up within three days.

PART SEVEN. INTERCEPTION OF TELECOMMUNICATION

**Article 126m**

1. If it is suspected that an offence has been committed as defined in article 67, paragraph 1, which in view of its nature or connection with other offences committed by the suspect constitutes a serious breach of the legal order, the public prosecutor may, if this is urgently required in the interests of the investigation, order an investigating officer as referred to in article 141(b) to record telecommunication with the aid of a technical device.

2. In this article 'telecommunication' means communication not intended for the public which takes place via the telecommunications infrastructure or via a telecommunications installation which provides a service to the public.

3. An order to record telecommunication shall be in writing and shall include:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the number of the connection and the name and address of the subscriber;

d. the period for which the order is valid.

4. Article 126l, paragraphs 4 to 8 shall apply *mutatis mutandis.*

### Article 126n

1. In the event of discovery *in flagrante delicto,* or suspicion that an offence as defined in article 67, paragraph 1 has been committed, or in the case of the offence referred to in article 138a of the Criminal Code, the public prosecutor may, in the interests of the investigation, demand the disclosure of information regarding all traffic via the telecommunications infrastructure or via a telecommunications installation which provides a service to the public, in which the suspect is believed to have taken part.

2. The demand referred to in paragraph 1 may be made to any employee of a person or company operating under the Telecommunications Act pursuant to:

a. a concession as defined in section 3, subsection 1 of the said Act;

b. an infrastructure licence as referred to in section 3a, subsection 1 of the said Act;

c. a licence as referred to in section 13a or a provisional licence as referred to in section 13i of the said Act, and

d. a franchise as referred to in chapter III of the said Act, if a telecommunications installation is being used to provide a service to the public.

3. Articles 217, 218 and 219 shall apply *mutatis mutandis.*

### TITLE V. SPECIAL INVESTIGATIVE POWERS IN CONNECTION WITH THE PLANNING OR COMMITTING OF SERIOUS ORGANISED CRIME

### Article 126o

1. If facts or circumstances give rise to reasonable suspicion that offences as defined in article 67, paragraph 1 are being planned or committed on an organised basis, which in view of their nature or connection with other offences planned or committed by the same organisation constitute a serious breach of the legal order, the public prosecutor may, in the interests of the investigation, order an investigating officer to follow a person or observe his presence or behaviour on a systematic basis.

2. In the interests of the investigation, the public prosecutor may decide that an enclosed place, not being a dwelling, shall be entered without the permission of the title holder, in order to carry out the order referred to in the preceding paragraph.

3. The public prosecutor may decide in the interests of the investigation that a technical device shall be used, provided it is not used to record confidential communications. No technical device shall be attached to a person without his permission.

4. A surveillance order shall be in writing and shall include:

a. a description of the organisation;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the name or as accurate as possible a designation of the person referred to in paragraph 1;

d. if paragraph 2 is applied, the place to be entered;

e. the way in which the order is to be executed, and

f. the period for which the order is valid.

5. Article 126g, paragraphs 4 and 6 to 8 shall apply *mutatis mutandis.*

6. An order as referred to in paragraph 1 may also be given to a person in the public service of another State. Certain requirements may be imposed on that person by order in council. Paragraphs 2 to 5 shall apply *mutatis mutandis*.

**Article 126p**

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, if this is urgently required in the interests of the investigation, order an investigating officer as referred to in article 141(b) to join or assist the organisation in question.
2. In carrying out the order referred to in paragraph 1, the investigating officer may not induce a person to commit an offence other than the one he was already intending to commit.
3. An infiltration order shall be in writing and shall include:
a.  a description of the organisation;
b.  the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;
c. the way in which the order is to be executed, including any activities which constitute an offence, insofar as this is possible to foresee at the time the order is issued, and
d. the period for which the order is valid.
4. An order as referred to in paragraph 1 may also be issued to:
a. a person in the public service of another State who complies with requirements laid down by order in council;
b. an investigating officer as referred to in article 141 (c) or article 142, provided the said officer complies with the requirements of the order in council regarding  training and co-operation with investigating officers as referred to in article 141 (b).
Paragraphs 2 and 3 shall apply *mutatis mutandis*.
5. Article 126g, paragraphs 7 and 8 shall apply *mutatis mutandis*, on the understanding that an infiltration order may not be extended verbally.

**Article 126q**

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, in the interests of the investigation, order an investigating officer to buy goods from or provide services to a person concerning whom there is reasonable suspicion based on the facts or circumstances, that he is involved in planning or committing offences on an organised basis.
2. In carrying out the order referred to in paragraph 1, the investigating officer may not induce a person to commit or plan an offence other than the one he was already intending to commit or plan.
3. A pseudo purchase or provision of services order shall be in writing and shall include:
a. a description of the organisation;
b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;
c. the nature of the goods or services;
d. the way in which the order is to be executed, including any activities which constitute an offence, and
e. the date on which or the period within which the order is to be executed.
4. An investigating officer as referred to in paragraph 1 shall also mean a person in the public service of another State who complies with requirements laid down by order in council.
5. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis*.

**Article 126qa**

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, in the interests of the investigation, order an investigating officer, as referred to in article 141 (b), to systematically obtain information about a person about whom there is reasonable suspicion that they are involved in planning or committing organised crimes, without making known that he is acting as an investigating officer.

2. The order will be given for a period of a maximum of three months. The period of validity can be extended on each occasion for a period of a maximum of three months.

3. The order to obtain information shall be in writing and shall include:

a. a description of the organised context;

b. the facts or circumstances proving that the conditions referred to in the first paragraph are fulfilled;

c. if known, the name, or otherwise as accurate a description as possible, of the person referred to in the first paragraph;

d. the way in which the order will be carried out, and

e. the period of validity of the order.

4. An order such as referred to in the first paragraph can also be given to:

a. a person in the public service of a foreign country who complies with the requirements of the order in council;

b. an investigating officer as referred to in article 41 (c), or article 142, as long as this investigating officer complies with the requirements of the order in council with regard to training and co-operation with investigating officers as referred to in article 141 (b). The second and third paragraphs shall apply *mutatis mutandis*.

5. Article 126g, sixth to eighth section inclusive, shall apply *mutatis mutandis*.

### Article 126r

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, in the interests of the investigation, order an investigating officer to enter an enclosed place, not being a dwelling, or to use a technical device, without the permission of the title holder, in order to:

a. examine the place in question;

b. secure evidence found there, or

c. to place a technical device there with a view to establishing the presence or transport of a particular object.

2. An order as referred to in paragraph 1 shall be in writing and shall include:

a. a description of the organisation;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the place to which the order relates;

d. the way in which the order is to be executed, and

e. the date on which or the period within which the order is to be executed.

3. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis*.

### Article 126s

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, if this is urgently required in the interests of the investigation, order an investigating officer as referred to in article 141(b) to record with the aid of a technical device a confidential communication one of the participants in which is the subject of reasonable suspicion, based on the facts or circumstances, that he is involved in planning or committing offences on an organised basis.

2. In the interests of the investigation, the public prosecutor may order that an enclosed place, not being a dwelling, shall be entered without the permission of the title holder, in order to carry out the order referred to in the preceding paragraph. In carrying out an order, he can determine that a dwelling be entered without the permission of the title holder if the investigation requires this urgently and if organised crimes are being planned or committed which carry a prison sentence of six years or more. Article 2, first paragraph, last sentence of the General Act on Entering is not applicable.

3. An order to record a confidential communication shall be in writing and shall include:

a. a description of the organisation;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled and, in cases of the application of the second sentence of the second paragraph, the conditions stated in the second paragraph have been fulfilled;

c. the name of the person referred to in paragraph 1 and, if known, other participants in the communication;

d. if paragraph 2 is applied, the place to be entered;

e. the way in which the order is to be executed, and

f. the period for which the order is valid.

4. An order as referred to in paragraph 1 may be given only after written authorisation has been obtained from the examining magistrate on the application of the public prosecutor. Such authorisation shall apply to all parts of the order. If a dwelling is to be entered in carrying out the order then this must be explicitly mentioned in the authorisation.

5. An order shall be given for a period not exceeding four weeks and may be extended, on each occasion for a further four weeks.

6. Article 126g, paragraphs 6 to 8 shall apply *mutatis mutandis,* on the understanding that the public prosecutor requires authorisation from the examining magistrate for any change, addition or extension of the order. If the public prosecutor determines that a dwelling is to be entered in carrying out the order, then the order may not be given verbally. As soon as the conditions referred to in the second sentence of the second paragraph are no longer fulfilled, the public prosecutor will determine that carrying out the order is terminated.

7. In urgent cases, the authorisation of the examining magistrate referred to in paragraphs 4 and 6 may be given verbally unless the second sentence of the second paragraph is applicable. In such cases the examining magistrate shall then put the order in writing within three days.

8. An official report of the recordings shall be drawn up within three days.

## Article 126t

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, if this is urgently required in the interests of the investigation, order an investigating officer to record with the aid of a technical device telecommunication one of the participants in which is the subject of reasonable suspicion, based on the facts or circumstances, that he is involved in planning or committing offences on an organised basis.

2. In this article 'telecommunication' means communication not intended for the public which takes place via the telecommunications infrastructure or via a telecommunications installation which provides a service to the public.

3. An order to record telecommunication shall be in writing and shall include:

a. a description of the organisation;

b. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;

c. the number of the connection and the name and address of the subscriber;

d. the name of the person referred to in paragraph 1 if he is not the subscriber, and

e. the period for which the order is valid.

4. Article 126s, paragraphs 4 to 8 shall apply *mutatis mutandis.*

## Article 126u

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may in the interests of the investigation, demand the disclosure of information regarding all traffic via the telecommunications infrastructure or via a telecommunications installation which provides a service to the public, where it is suspected that a person has taken part in that traffic who is the subject of reasonable suspicion, based on the facts or circumstances, that he is involved in planning or committing offences on an organised basis.

2. The demand referred to in paragraph 1 may be made to any employee of a person or company operating under the Telecommunications Act pursuant to:

a. a concession as defined in section 3, subsection 1 of the said Act;

b. an infrastructure licence as referred to in section 3a, subsection 1 of the said Act;

c. a licence as referred to in section 13a or a provisional licence as referred to in section 13i of the said Act, and

d. a franchise as referred to in chapter III of the said Act, if a telecommunications installation is being used to provide a service to the public.

3. Articles 217, 218 and 219 shall apply *mutatis mutandis*.

**TITLE VA. ASSISTANCE FROM CIVILIANS**

PART ONE. REQUEST TO OBTAIN INFORMATION

**Article 126v**

1. If it is suspected that an indictable offence has been committed, or in a case as referred to in article 126o, paragraph 1, the public prosecutor may, in the interests of the investigation, order an investigating officer to conclude an agreement with a person who is not an investigating officer that the latter will assist the investigation for the duration of the order by obtaining information in a systematic manner concerning a suspect or a person in relation to whom there is reasonable suspicion that he is involved in planning or committing offences on an organised basis.
2. The order referred to in paragraph 1 shall be in writing and shall include:
a. where the commission of an offence is suspected, the offence and, if known, the name or as accurate as possible a designation of the suspect;
b. in a case as referred to in article 126o, paragraph 1, a description of the organisation;
c. the facts or circumstances demonstrating that the conditions set out in paragraph 1 have been fulfilled;
d. as accurate as possible a designation of the person concerning whom information is to be obtained, and
e. the period for which the order is valid.
3. An agreement to gather information in a systematic manner shall be in writing and shall include:
a. the rights and obligations of the person assisting the investigation, and the way in which the agreement is to be implemented, and
b. the period for which the agreement is valid.
4. Article 126g, paragraphs 4 and 6 to 8 shall apply to the order *mutatis mutandis*.

PART TWO. NON-POLICE INFILTRATION

**Article 126w**

1. In a case as referred to in article 126h, paragraph 1, the public prosecutor may, if this is urgently required in the interests of the investigation, conclude an agreement with a person who is not an investigating officer that the latter will assist the investigation by joining or assisting a group of persons who can reasonably be suspected of planning or committing offences.
2. Paragraph 1 shall be applied only if the public prosecutor is of the opinion that an order as referred to in article 126h, paragraph 1 cannot be given.
3. The person assisting the investigation pursuant to paragraph 1 may not, in providing the said assistance, induce another person to commit an offence other than the one he was already intending to commit.
4. In applying paragraph 1, the public prosecutor shall record in writing:
a. the offence and, if known, the name or as accurate as possible a designation of the suspect;
b. a description of the group of persons;
c. the facts or circumstances demonstrating that the conditions set out in paragraphs 1 and 2 have been fulfilled.
5. An infiltration agreement shall be in writing and shall include:
a. the rights and obligations of the person assisting the investigation pursuant to paragraph 1, and the way in which the agreement is to be implemented, and
b. the period for which the agreement is valid.
6. The person assisting the investigation pursuant to paragraph 1 may not commit any offences while so doing unless the written authorisation of the public prosecutor has been

obtained in advance. In urgent cases, the authorisation may be given verbally. In such cases, the public prosecutor shall put the authorisation in writing within three days.

7. As soon as the conditions referred to in paragraph 1 are no longer fulfilled, the public prosecutor shall terminate the implementation of the agreement.

8. The agreement may be amended, supplemented, extended or terminated in writing. The public prosecutor shall put the reasons for this in writing within three days.

## Article 126x

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, if this is urgently required in the interests of the investigation, conclude an agreement with a person who is not an investigating officer that the latter will assist the investigation by joining or assisting the criminal organisation.

2. Paragraph 1 shall be applied only if the public prosecutor is of the opinion that an order as referred to in article 126p, paragraph 1 cannot be given.

3. The person assisting the investigation pursuant to paragraph 1 may not, in providing the said assistance, induce another person to commit an offence other than the one he was already intending to commit.

4. Article 126w, paragraphs 4 to 8 shall apply *mutatis mutandis*.

PART THREE. NON-POLICE PSEUDO PURCHASES AND PROVISION OF SERVICES

## Article 126y

1. In a case as referred to in article 126i, paragraph 1, the public prosecutor may, in the interests of the investigation, conclude an agreement with a person who is not an investigating officer that the latter will assist the investigation by buying goods from or providing services to the suspect.

2. Paragraph 1 shall be applied only if the public prosecutor is of the opinion that an order as referred to in article 126i, paragraph 1 cannot be given.

3. The person assisting the investigation pursuant to paragraph 1 may not, in providing the said assistance, induce another person to commit an offence other than the one he was already intending to commit.

4. In applying paragraph 1, the public prosecutor shall record in writing:

a. the offence and, if known, the name or as accurate as possible a designation of the suspect;

b. the facts or circumstances which demonstrate that the conditions set out in paragraphs 1 and 2 have been fulfilled;

c. the nature of the goods or services.

5. A pseudo purchase or provision of services agreement shall be in writing and shall include:

a. the rights and obligations of the person assisting the investigation pursuant to paragraph 1, and the way in which the agreement is to be implemented, including any activities which constitute an offence, and

b. the date on which or the period within which the agreement is to be implemented.

6. Article 126w, paragraphs 7 and 8 shall apply *mutatis mutandis*.

## Article 126z

1. In a case as referred to in article 126o, paragraph 1, the public prosecutor may, in the interests of the investigation, conclude an agreement with a person who is not an investigating officer that the latter will assist the investigation by buying goods from or providing services to a person who is the subject of reasonable suspicion, based on the facts or circumstances, that he is involved in planning or committing offences on an organised basis.

2. Paragraph 1 shall be applied only if the public prosecutor is of the opinion that an order as referred to in article 126q, paragraph 1 cannot be given.

3. The person assisting the investigation pursuant to paragraph 1 may not, in providing the said assistance, induce another person to commit an offence other than the one he was already intending to commit.

4. Article 126y, paragraphs 4 to 6 shall apply *mutatis mutandis*.

**TITLE VB. GENERAL RULES RELATING TO THE POWERS GRANTED UNDER TITLES IVA, V, AND VA**

PART ONE. ADDITION TO CASE DOCUMENTS

**Article 126aa**

1. The public prosecutor shall add to the case documents the official reports and other items from which information may be derived that has been obtained through the exercise of one of the powers referred to in Titles IVa to Va, insofar as they are relevant to the investigation.

2. Insofar as the official reports or other items referred to in paragraph 1 contain statements made by or to a person who might be exempt pursuant to article 218 from giving evidence if he should be asked to testify as a witness as to the content of the said statements, the official reports and other items in question shall be destroyed. Regulations regarding this shall be given by Order in Council. Insofar as the official reports or other items involve different statements than those referred to in the first sentence made by or to persons referred to in the first sentence, they will not be added to the case documents without obtaining prior permission from the examining magistrate.

3. The said official reports or other items shall be added to the case documents as soon as the interests of the investigation so allow.

4. If no official report of the exercise of one of the powers referred to in Titles IVa to Va is added to the case documents, the latter documents shall make reference to the fact that the said power has been exercised.

5. A suspect or his counsel may request the public prosecutor in writing to add certain official reports or other items specified by him to the case documents.

PART TWO. NOTIFICATION OF PERSON CONCERNED

**Article 126bb**

1. The public prosecutor shall notify the person concerned in writing of the exercise of one of the powers referred to in Titles IVa to Va as soon as the interests of the investigation so allow. Notification will not take place if it is not reasonably possible to do so.

2. A person concerned within the meaning of paragraph 1 shall be:

a. a person in respect of whom one of the powers referred to in Titles IVa, V or Va has been exercised;

b. a user of telecommunication or the technical aids to telecommunication as referred to in articles 126m, paragraph 3(c), and 126t, paragraph 3(c);

c. a title holder in respect of an enclosed place as referred to in articles 126g, paragraph 2, 126k, 126l, paragraph 2, 126o, paragraph 2, 126r and 126s, paragraph 2.

3. If the person concerned is the suspect, he need not be notified provided he is informed of the exercise of powers pursuant to article 126aa, paragraph 1 or 4.

PART THREE. STORAGE AND DESTRUCTION OF OFFICIAL REPORTS AND OTHER ITEMS AND USE OF INFORMATION FOR OTHER PURPOSES

**Article 126cc**

1. As long as the case has not been concluded, the public prosecutor shall keep the official reports and other items from which information may be derived that has been obtained through surveillance using a technical device that records signals, through the recording of confidential communications, or the investigation of telecommunication, insofar as these have not been

11

added to the case documents, and shall make them available for the purposes of the investigation.

2. Two months after the case has been concluded and the last notification as referred to in article 126bb has been made, the public prosecutor shall have the official reports and other items referred to in paragraph 1 destroyed in his presence. An official report shall be drawn up regarding their destruction.

3. For the purposes of paragraph 2, a preliminary investigation which cannot reasonably be expected to lead to criminal proceedings shall be equated with a case that has been concluded.

4. Regulations shall be laid down by order in council governing the manner in which the official reports and other items referred to in paragraph 1 shall be stored and destroyed.

**Article 126dd**

1. The public prosecutor may decide that information obtained through surveillance using a technical device which records signals, through the recording of confidential communications, or the investigation of telecommunication may be used for:
a. a criminal investigation other than the one in which the power was exercised;
b. storage in the serious crime file, if the information in question concerns a person as referred to in section 13a, subsection 1 (a-c) of the Data Protection (Police Files) Act.

2. If paragraph 1(a) is applied, the information need not be destroyed, article 126cc, paragraph 2 notwithstanding, until the other investigation has been concluded. If paragraph 1(b) is applied, the information need not be destroyed until such time as the Data Protection (Police Files) Act no longer permits the storage of information.

PART FOUR. TECHNICAL DEVICES

**Article 126ee**

Rules shall be laid down by order in council governing:
a. the storage and issue of technical devices as referred to in articles 126g, paragraph 3, 126l, paragraph 1, 126o, paragraph 3 and 126s, paragraph 1;
b. the technical requirements to be met by the devices, notably with a view to the integrity of the observations recorded;
c. monitoring compliance with the requirements referred to under b.;
d. the agencies responsible for the technical processing of the recorded signals;
e. the way in which processing as referred to under d. takes place, in connection with *ex post* control, or the safeguards attached to processing and the opportunities for a counter inquiry.

FIFTH PART. BAN ON LAISSEZ PASSER

**Article 126ff**

1. The investigating officer who is carrying out an order as described in titles IVa to V inclusive, is under an obligation to make use of his powers of confiscation if whilst carrying out the order he comes to know the place in which objects can be found, the presence or possession of which are forbidden by law due to their harmfulness to public health or their danger to safety. Confiscation may only be delayed in the interests of the investigation with a view to carrying it out at a later date.

2. The obligation to confiscate referred to in the first paragraph is not valid in a case where the public prosecutor orders otherwise on the basis of considerable investigative interests.

3. An order as described in the second paragraph shall be in writing and shall include:
a. the items involved,
b. the considerable investigative interests, and
c. the period of time during which the obligation to confiscate is invalid.

**TITLE VC. EXPLORATORY INVESTIGATIONS**

**Article 126gg**

If facts or circumstances give rise to indications that associations of persons are planning or committing offences as defined in article 67, paragraph 1, which in view of their nature or connection with other offences planned or committed by the same association of persons constitute a serious breach of the legal order, the public prosecutor may order investigating officers to make inquiries into the said association with the aim of preparing for an investigation.

The following article shall be inserted after article 132.

**Article 132a**

The investigation shall mean an investigation led by the public prosecutor with the aim of taking decisions under the Code of Criminal Procedure and prompted by reasonable suspicion that an offence as defined in article 67, paragraph 1 has been committed or that such offences are being planned or committed by a criminal organisation, which in view of their nature or connection with other offences planned or committed by the same organisation constitute a serious breach of the legal order.

After article 140, article 140a will be added, which reads as follows:

**Article 140a**

The Committee of Attorneys-General shall agree in advance and in writing with an order referred to in article 126ff, or an agreement such as that referred to in the second part of title Va of Book I or an alteration or extension in same, respectively.

Article 187 shall be amended as follows.

a. The second sentence of paragraph 2 shall be deleted and the following sentence added: He may decide that the suspect and his counsel may not be present at the hearing of the witness insofar as this is strictly necessary in view of the interests referred to in article 187d, paragraph 1. In the latter case, the public prosecutor is not entitled to be present either.

b. A third paragraph shall be added, reading:
3. If the witness or expert is heard in their absence, the public prosecutor, the suspect and his counsel shall be informed as soon as possible of the statements made by the said witness or expert, insofar as this is compatible with the interests referred to in article 187d, paragraph 1.

Article 187b shall be amended as follows.

a. The number 1. shall be placed at the beginning of the existing text.

b. A second paragraph shall be added, reading:
2. The official report of the interrogation shall mention the fact that the examining magistrate prevented an answer being given to a particular question.

After article 187c, the following article shall be inserted:

**Article 187d**

1. The examining magistrate may, *ex proprio motu*, on the application of the public prosecutor or at the request of the suspect, his counsel or a witness, prevent the answers to questions relating to specific information becoming known to the public prosecutor, the suspect or his counsel, if there are grounds for suspecting that making such information known will:
   a. cause severe difficulties for the witness or hamper the exercise of his office or profession;
   b. be highly prejudicial to the interests of the investigation.
2. The examining magistrate shall state the grounds for applying paragraph 1 in his official report.
3. The examining magistrate shall take any measures which may reasonably be deemed necessary to prevent information as referred to in paragraph 1 being disclosed. To this end he is empowered to refrain from including information in the case documents.
4. If the examining magistrate prevents an answer to a question becoming known to the public prosecutor, the suspect or his counsel, he shall state in the official report that the relevant question was answered.
5. There shall be no possibility of appeal or appeal in cassation against a decision taken pursuant to paragraph 1.


Article 219a shall read as follows.

**Article 219a**

A witness who by virtue of his office or profession is involved in the hearing of a threatened witness or a hearing whereby article 187d is applied, or a hearing preceding such a hearing, may be exempted from answering a question put to him, insofar as this is necessary to protect the interests referred to in article 187d, paragraph 1 or article 226a, paragraph 1.


After the words "coercive measures" in article 552i, paragraph 2 the following shall be inserted: "or the powers regulated in articles 126g to 126z and article 126gg".


Article 552n, paragraph 1, shall be amended as follows.

a. Point c shall read:
c. if it is necessary in view of the desired result to impound items of evidence.

b. Point d shall be deleted.


Article 552o shall be amended as follows.

a. In paragraph 1a the words "and the tapping or recording of data traffic not intended for the public which is transmitted via the telecommunications infrastructure or via a telecommunications installation which provides a service to the public" shall be replaced by "and the investigation of data in automated systems."

b. Paragraph 3 shall read as follows.

3. Unless the relevant treaty or convention states otherwise, coercive measures may not be employed in order to comply with a request for legal assistance except in accordance with the preceding paragraphs.

c. Paragraph 4 shall be deleted.


The following article shall be inserted after article 552o.

## Article 552oa

1. The powers defined in articles 126l, 126m, 126s and 126t may be exercised if an admissible request to that end, based on a treaty or convention, is received from the authorities of another State.

2. Other powers, as defined in titles IVa, V, Va and Vc of Book 1, may be exercised if an admissible request for legal assistance so requires.

3. Unless the relevant treaty or convention states otherwise, the powers defined in titles IVa, V, Va and Vc of Book 1 may not be exercised in order to comply with a request for legal assistance other than in accordance with the preceding paragraphs.

4. Official reports and other items obtained through the application of one of the powers defined in articles 126l, 126m, 126s and 126t may be handed over to foreign authorities by the public prosecutor provided the court has given permission taking into account the relevant treaty or convention.

5. Articles 126aa, paragraph 2 and 126bb to 126dd shall apply *mutatis mutandis*. Article 126cc shall apply only if the relevant official reports and other items have not been handed over to the foreign authorities. The public prosecutor shall ensure that at some point the person concerned may see the official reports and other items relating to him.


Article 552p shall be amended as follows.

a. In paragraph 2, the words "data carriers" shall be followed by: "in his charge"

b. Paragraph 5 shall be deleted.


## SECTION II

The Data Protection (Police Files) Act shall be amended as follows.

In section 1, point j after the word "case", the following words shall be inserted: "or as part of an exploratory investigation as referred to in article 126gg of the Code of Criminal Procedure".


## SECTION III

To the Judicial Organisation Act will be added article 131, fifth paragraph: , this shall include in any case decisions referred to in article 140a of the Code of Criminal Procedure.


## SECTION IV

This Act shall come into force on a date to be determined by Royal Decree, a date which may vary for the different part of articles of the act.

**SECTION V**

1. Orders and agreements issued or concluded before the date on which this Act comes into force shall be equated with orders and agreements within the meaning of articles 126g to 126z and articles 126ff and 126gg, if they comply with the requirements laid down in the relevant article.
2. In cases where before the date on which this Act came into force orders for the tapping and recording of data traffic were given or demands for the disclosure of information regarding data traffic were made, articles 125f, 125g and 125h of the Code of Criminal Procedure shall remain in force as they read before this Act entered into effect.

We order and command that this Act shall be published in the Bulletin of Acts and Decrees (*Staatsblad*) and that all ministries, authorities, bodies and officials whom it may concern shall diligently implement it.

Done at The Hague, 27 May 1999

Beatrix

Minister of Justice,
A.H. Korthals

16

May 2000

# Special Powers of Investigation Act (*Wet Bijzondere opsporingsbevoegdheden*)

The Special Powers of Investigation Act or *Wet BOB* came into effect on 1 February 2000 and relates to an amendment to the Dutch Code of Criminal Procedure. The act is a direct result of the parliamentary inquiry into criminal investigation methods. The inquiry underlined the fact that there seemed to be a number of investigative processes that were unknown to many parties. The committee of inquiry named, after its chairman, the *Van Traa* committee) investigated the various, often unknown, investigative methods. The *Wet BOB* now legally regulates methods of this nature.

### Starting points of the *Wet BOB*
The object of the *Wet BOB* is to standardise and improve methods of managing criminal investigations. A number of starting points of this act are outlined below, including:

### Principle of legality
The principle of legality means that a statutory basis is required for methods of investigation that could seriously impact the integrity of the investigation or ability to monitor it, or could infringe civil rights.

The Code of Criminal Procedure does not contain a systematic description of all methods of investigation. The new *Wet BOB* names a number of such methods, which are dealt with in brief in this fact sheet.

### Openness and scope for monitoring investigations
One of the act's key aims is that investigations must be open and must offer scope for monitoring the methods used; accounting for the powers deployed during the investigation in a public hearing must be vouchsafed.

Information can only be protected if the interests of the investigation or of a witness are seriously endangered. In addition to the possibilities already offered by the Civil Code and case law, the *Wet BOB* adds another: the examining magistrate can interview a witness without the presence of the defence lawyer.

More openness and control is countered by the justified need to preserve the secrecy of certain working methods and strategies and to protect the identity of informants. For instance, the witnesses could be investigating officers who have used a certain technique or who have run an informant. In the most extreme cases, the informant may also be interviewed himself.

The so-called obligation of notification is another stipulation and means that, once the interests of the investigation permit, the public prosecutor informs the individual who is the subject of the special investigation. Especially if the investigation preliminary to prosecution does not lead to a criminal trial, it will prevent that the special powers of investigation used remain secret.

### Goal of the investigation: settlement of criminal offences by a criminal court
Special powers of investigation must only be applied to investigate and settle criminal cases in a criminal court. Other purposes, such as only improving the intelligence held by the police or the dismantling of a criminal organisation that do not lead to settlement by a criminal court are thus excluded here.

### Authority of the Public Prosecutions Department
The *Wet BOB* confirms that the public prosecutor is the appropriate official to lead the criminal investigation. Every special power of investigation can be used once the public prosecutor has issued a warrant. Prior authorisation of the examining magistrate is only required if confidential communications or telecommunications are to be recorded. The Act determines that the public prosecutor must have the consent of the board of procurators general for civilian infiltration and matters involving *laissez passer*. The board must first present its decision to the Minister of Justice. More information on this point is given later in this fact sheet.

### Special Powers of Investigation
The *Wet BOB* provides for three *under cover* powers: covert investigation (infiltration), pseudo purchase/services and systematically obtaining intelligence about suspects through *under cover* investigations. These powers involve situations in which an investigating officer is active in the milieu of the suspected persons without his identity as investigating officer being known. In addition, the *Wet BOB*

covers all types of surveillance, or entering and 'looking into' premises and recording of confidential communications.

### Surveillance

The Act defines surveillance as systematically following a person or systematically observing their whereabouts. Systematically following or observing a person is only permitted in the case of a suspected crime and at the order of the public prosecutor. Surveillance is systematic if it enables a more or less complete picture to be gained of certain aspects of a person's life such as their financial activities or structural personal contacts with specific individuals. Systematic surveillance can include observing a person over a number of days using an observation team or following someone using a scanning device. Non-systematic surveillance is ordinary surveillance or the incidental observation of a number of actions or events. If technical aids are used which register signals of the person under surveillance, this is similar to systematically following or observing the individual.

Surveillance of private homes is not permitted. Other locked premises such as office buildings or warehouses and storage buildings may be placed under surveillance, but only in the case of serious crimes. These locations may be entered without the owner's permission in order to place recording equipment or to perform other activities to enable the surveillance.

### Infiltration

Covert investigation or infiltration is defined as participating or co-operating with a group of people that is believed to be planning crimes or to have committed crimes. If the officer involved in the covert investigation wishes to seem plausible to the group, he will have to take part in their activities. In a covert investigation there is a serious risk that the covert investigator will have to commit criminal offences. The act lays down that actions that could give rise to a criminal offence should be listed in the warrant issued by the public prosecutor.

As an infiltrator, the investigating officer cannot incite a person to commit criminal offences other than this individual had already planned: inciting the perpetration of an offence is ruled out. This is known as the "Tallon Criterion". Various types of infiltration are covered by the covert investigation regulation. The starting point is that the covert investigation is carried out by a police officer. The act provides for a regulation for the activities of a special investigating officer. Infiltration by members of the public (civilians) is outlined in the paragraph *Civilian Support and Covert Investigation*.

### Pseudo purchase/services

The *Wet BOB* defines pseudo purchase/services as the purchase of goods from, or the supply of services to, the suspect. The characteristic feature of this power is that the investigating officer behaves towards the suspect in such a way that a criminal offence could result. For this reason, the Act incorporates the Tallon Criterion to regulate pseudo purchase/services in a similar way to covert investigation.

Pseudo purchase/services can also take place without being part of a covert investigation, which is why this power has been regulated separately to covert investigation.

### Systematically gathering intelligence under cover

This means that a police officer systematically obtains intelligence on the suspect through under cover activities such as frequenting the suspect's haunts (sports club, bar or newsgroup) without it being apparent that he is acting as a police officer.

The fact that the investigating officer is infringing the suspect's privacy and misleading him is of key relevance: the suspect does not know that a police officer has entered his environment, while the officer himself takes active steps to become involved in his life. Because the investigating officer is not committing punishable acts, under cover work poses far fewer risks to the integrity and security of the investigation than covert investigation and pseudo purchase/services. Therefore the power is bound by less serious conditions.

### Powers to enter locked premises: 'looking in'

*Looking in'* refers to entering locked premises (not private premises, but an office or warehouse) without the owner's permission. The objective is to look around and secure traces, such as a sample, a fingerprint or a photo. But it could also provide an opportunity for the placement of technical aids (such as a scanner) in a vehicle in a garage. Opening cupboards and cabinets and breaking down doors is not permitted.

In order to take samples, packaging can be opened, even if kept inside a container (which is not the same as a cabinet or cupboard).

*'Looking in'* also includes examining a location using technical equipment such as a robot, a rod or an infra red camera.

### Recording confidential information

This involves recording confidential communications using technical equipment such as recording conversations and telecommunications in a closed network such as a company network. This category also includes bugging a personal computer to access messages before they are sent over the Internet or encoded and 'scanning' (using a radio receiver to intercept mobile telephony).

On the whole, recording confidential communications involves more risks than recording telecommunications. To record confidential information, technical equipment must be placed close to the suspects' environment. The regulation does not include communications that can be picked up without using technical aids, for example audible conversations in a bar or on the street. The regulation only concerns confidential communication: exchanges between persons or organisations that take place behind closed doors. Behind closed doors means that the parties involved have every right to believe that third parties cannot hear what they are discussing in normal circumstances. However, the regulation does include confidential communications in which the investigating officer takes part, for instance in cases of covert investigation.

Recording confidential communication in a private house is only permitted under strict conditions: if it is urgently required for the investigation, if the offence carries a term of imprisonment of eight years or more and the examining magistrate has given explicit authority.

### Investigating telecommunications

This involves telephone taps and claiming data concerning telephone traffic. The power to claim data on telephone traffic remains unaltered although the power to tap telephone lines has been amended.

It is no longer the examining magistrate but the public prosecutor who, after receiving authority from the examining magistrate, issues a warrant to tap a telephone and ensures that the data acquired thereby is stored and destroyed. The condition that the suspect takes part in the telecommunication has been abolished; instead the offence in question must pose a serious breach to law and order.

### Special powers of investigation in fighting organised crime

The powers outlined above may not only be used to resolve concrete offences that have been committed, but can also be applied to investigations into organised crime.

This means that investigative efforts need not be restricted to the investigation of concrete crimes that have already been committed because organised crime involves the constant planning and perpetration of crimes that have serious impact on society.

This so-called pro-active investigation, investigation into offences that have not yet been committed, can only be deployed when tackling organised crime. For less serious forms of crime, special powers of investigation can only be used to investigate offences that have already been committed.

### Civilian Support and Investigation

The *Wet BOB* contains a regulation describing informants, civilian infiltrators and civilians involved in pseudo purchase/services.

### The informant

An investigative officer can use a civilian to systematically acquire information on a certain person, once the public prosecutor has issued a warrant, for the duration of that warrant. This suspect must be minutely described in the warrant and must be an individual involved in the organised planning or perpetration of serious crimes.

The act only regulates informants who provide systematic information because this could violate the personal privacy of the individual about whom he obtains information. Someone who gives tips or an informant who provides general or incidental information is not regulated by the act.

**Civilian infiltration**

The *Wet BOB* determines that, if the public prosecutor finds that covert investigation by an investigative officer is impossible, he can deploy a civilian infiltrator. A written agreement must be drafted containing the reward and possible indemnification. Indemnification is only possible if the public prosecutor has given prior consent to criminal actions.

**Civilians involved in pseudo purchase/services**

The *Wet BOB* determines that, if the public prosecutor finds that pseudo purchase/services by an investigative officer are impossible, he can deploy a civilian as pseudo buyer or pseudo service provider. As with infiltration, a written agreement must be set down.

**Ban on *laissez passer***

The law prohibits harmful or dangerous substances or goods from entering the market. If an investigative officer is aware of the location of prohibited objects (like weapons or drugs) through using one of the special investigative powers, he is under obligation to seize these substances or goods. The public prosecutor can only decide not to seize these substances or goods if a serious investigative interest is at stake. This is governed by a stringent approval procedure: the board of procurators general must agree on a decision not to seize the objects. This decision must be presented in advance to the Minister of Justice. The same procedure also applies to allowing entry to individuals.

**Exploratory investigation**

The regulation of the exploratory investigation describes investigations into the influence of more serious types of crime in a certain social sector, preparatory to an investigation. Exploratory investigations are therefore not investigations and powers of investigation may not be applied. An exploratory investigation covers the gathering, combining and analysing of data from police and other records from which the investigative officer can obtain information, such as the registers of the Chamber of Commerce. Privacy legislation, specifically the Police Records Act and the Data Protection Act offer a context for processing personal details. This legislation determines the purpose for which information may be provided and stored.

**Public Prosecutions Department Policy regulation**

The board of procurators general has adopted the Powers of investigation Order (*Aanwijzing Opsporingsbevoegdheden*) (Netherlands Government Gazette, 4 February 2000, no. 25) for the implementation of the new legislation. For more information, please consult the website of the Public Prosecutions Department: www.openbaarministerie.nl.

**More information?**

If you would like more copies of this fact sheet or more information on this topic, please contact the:

Ministry of Justice
Information Department, Internal and External Communication
P.O. Box 20301
2500 EH  THE HAGUE
Telephone 070-370 68 50
Opening hours Monday – Friday, 9 am – 5 pm
Internet: http://www.minjust.nl
E-mail: voorlichting@best-dep.minjust.nl