IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR. NO. 05-337 (PLF) |
| | : | |
| WESAM AL-DELAEMA, | : | |
| | : | |
| Defendant. | : | |

**MOTION TO DISMISS COUNT ONE AND TO STRIKE
ALLEGATIONS OF COUNTS FOUR AND FIVE**

The defendant, Mr. Wesam Al-Delaema (herein "Mr. Delaema"), through counsel, moves the Court for an Order dismissing Count One and striking references to 18 U.S.C. § 2332(b) in Counts Four and Five.

Count One charges Mr. Delaema with conspiring to kill a national of the United States, who is outside this country, in violation of 18 U.S.C § 2332(b). Count Four charges Mr. Delaema with Possession of a Destructive Device During a Crime of Violence in violation of 18 U.S.C. § 924(c). Three underlying "crimes of violence" are alleged in this count, one of which is 18 U.S.C. § 2332(b). Count Five charges Mr. Delaema with Conspiracy to Possess a Destructive Device During a Crime of Violence in violation of 18 U.S.C. § 924(o). Similarly, § 2332(b) is one of the "crimes of violence" underlying this count. Mr. Delaema contends that the certification procedure established in subsection (d) of § 2332 is unconstitutional, that Count One must therefore be dismissed and that references to § 2332 as predicates to the offenses charged in Count Four and Five must be stricken from those counts.

1

18 U.S.C. § 2332(d) requires that the Attorney General certify the state of mind of the actor before a prosecution may be initiated under § 2332(b). It is this unbridled and standard-less certification which the defendant contends is unconstitutional. Whether viewed solely as a jurisdictional prerequisite or an element of the substantive offense, or both, the procedure whereby the required state of mind is simply "certified" by the prosecutor violates the due process clause and, if viewed solely as jurisdictional, the doctrine of separation of powers.[1]

Before addressing the constitutionality of § 2332, it must first be determined exactly what Congress intended in providing that an individual who kills or conspires to kill a national of the United States outside the United States must have done so with the intent to coerce, intimidate or retaliate against a government or a civilian population. One thing is, however, clear - Congress intended that no one would be convicted under § 2332 unless he or she acted with the required mental state.

## I. Section 2332(d) Is More Than a Congressionally-Imposed Limitation on the Exercise of Prosecutorial Discretion

§2332(d) provides that:

> "(d) **Limitation on prosecution.** – No prosecution for any offense described in this section shall be undertaken by the United States *except on written certification of the Attorney General* or the highest ranking subordinate of the Attorney General with responsibility for criminal prosecutions that, in the judgment of the certifying official, such offense was *intended to coerce, intimidate*

---

[1] The only reported case which counsel has found addressing the constitutionality of § 2332(d) is *United States v. Yousef*, 327 F.3d 56, 116-118 (2003), which rejected the challenge. The separation-of-powers issue discussed in Part II herein was not raised there. *Yousef* did reject the *Apprendi* challenge that is discussed below in Part III. In addition to disagreeing with the *Yousef's* abbreviated treatment of the *Apprendi* concerns, Mr. Delaema would also point out that *Yousef* preceded *Blakely v. Washington*, *infra*, and *United States v. Booker*, *infra*, which have expanded on and given even more impetus to the *Apprendi* argument.

*or retaliate* against a *government or a civilian population*. "

Emphasis added. There are three possible interpretations of this provision. First, § 2332(d) is arguably a jurisdictional requirement that was not intended to be part of the criminal conduct that Congress intended to proscribe, but only a factor that must be present in order for a federal court to take cognizance of the offense. Second, § 2332(d) arguably defines an element of the evil which Congress intended to proscribe in § 2332 in light of its clear description of the necessary state of mind of the perpetrator. Clearly, Congress did not intend that § 2332 would be treated as an element of the criminal offense which must be proved beyond a reasonable doubt, but, as the Supreme Court's decisions in the line of cases beginning with *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), indicates, Congress' intention in this regard is not determinative. Finally, § 2332 could be interpreted simply as a directive to the Attorney General concerning how he should exercise his prosecutorial discretion. In light of the fact that § 2332(d) focuses on a factual determination that is historically left to the trier-of-fact, this latter interpretation is the least plausible. But even if Congress intended the latter approach, its intent to have the Attorney General merely "certify" existence of a factually-driven *mens rea* predicate to prosecution, as opposed to a policy-driven predicate, is unconstitutional.

The general concept of "certification before prosecution" embodied in § 2332(d) is not unique in Title 18. What is idiosyncratic about § 2332 is the subject of the certification. Other provisions of Title 18 require certifications of the Attorney General prior to initiation of a prosecution. But a reading of these statutes shows that § 2332(d) is something very different.

3

For instance, 18 U.S.C. § 1119[2] prohibits the murder of a national of the United States by another U.S. national outside the United States. Because such crimes are normally prosecuted in the country where the murder was committed, § 1119 (c) directs the Attorney General to only prosecute in certain circumstances:

> (c) **Limitations on prosecution. - (1)** No prosecution may be instituted against any person under this section except upon the written approval of the Attorney General, the Deputy Attorney General, or an Assistant Attorney General, which function of approving prosecutions may not be delegated. No prosecution shall be approved if prosecution has been previously undertaken by a foreign country for the same conduct.
>
> (2) No prosecution shall be approved under this section unless the Attorney General, in consultation with the Secretary of State, determines that the conduct took place in a country in which the person is no longer present, and the country lacks the ability to lawfully secure the person's return. A determination by the Attorney General under this paragraph is not subject to judicial review.

The certification procedure of § 1119 was upheld in *United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003). But, rather than suggesting the validity of the § 2332(d) certification at issue here, the reasoning of *Wharton* illustrates the differences between Congressional direction concerning factors that have been traditionally the subject of prosecutorial discretion and those, such as *mens rea*, which have been historically left to the trier-of-fact.[3] *Wharton* explained why

---

[2]§ 1119 is very similar to § 2332 in that each relate to the killing of U.S. nationals outside the United States. § 1119 requires that the perpetrator be a U.S. national while § 2332 does not. Each statute contains a certification requirement, but as discussed herein, the nature of the required certifications are very different and that difference is of constitutional importance.

[3]The historical treatment accorded factual determinations is entitled to great weight. *See United States v. Gaudin*, 515 U.S. 506, 515 (1995) (in finding that the Constitution requires that a jury make the finding of materiality in a false statements prosecution, the Court notes that "historical practice is relevant to what the Constitution means by such concepts as trial by jury. . . . and it is precisely historical practice that we have relied on in concluding that the jury must find all the elements.").

the § 1119 certification procedure does not end-run the Supreme Court's holding in *Apprendi*.

> In *Apprendi*, however, the Supreme Court recognized that the essential elements of a crime may include factual determinations that are not necessarily described as offense elements in the statute. . . . *Apprendi*'s recognition of statutorily separate offense elements is inapplicable here for two reasons. First, *the determination under § 1119(c)(2) does not involve the resolution of a question of fact, but rather a complicated determination of fact and law combined with prosecutorial considerations*. . . .

320 F.3d at 534 (Emphasis added). The certifications required by § 1119(c) reflect classic legal issues can only be resolved by reference to international law, interpretation of treaties, the particular country's extradition laws and its ability to obtain custody of the defendant by means of comity. These are issues that are analogous to a host of other legal issues not traditionally submitted to juries. But the determination which Congress delegates to the Attorney General in § 2332(d) is one of an entirely different stripe. Issues of *mens rea* are precisely those that must be submitted to and proven beyond a reasonable doubt to the trier-of-fact.

      This Circuit has upheld another certification provision in Title 18. In *In Re Sealed Case*, 131 F.3d 208 (D.C. Cir. 1997), the court held that, absent bad faith, there was no judicial review of the certification required for prosecution of juveniles in federal court. 18 U.S.C. § 5032 provides that a juvenile shall not be prosecuted in federal court unless the Attorney General certifies that:

> (1) the juvenile court or other appropriate court of a State does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, (2) the State does not have available programs and services adequate for the needs of juveniles, or (3) the offense charged is a crime of violence that is a felony or [a drug offense]. . . and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

Again, this certification is very unlike that of § 2332(d), and the differences cannot be explained

as mere nuance. Like the certification of § 1119(c), the juvenile certification focuses on issues of law and policy. Whether a State has available programs and services or whether there is a "substantial federal interest" in prosecuting a particular case are considerations grounded in policy and legal considerations.

> The decision to certify that a particular case involves a "substantial federal interest" implicates the core prosecutorial discretion vested in the Attorney General or her delegates. . . a "substantial federal interest" may vary depending upon federal policy and upon factors "such as the general incidence of crime, the need for deterrence, enforcement priorities, and the like. [Citation omitted]. The Executive, not the courts of law, is best qualified to determine such matters. [Citation omitted].

131 F.3d at 214. The Court went on to hold that a "policy-laden" determination such as that required by § 5032 is "properly entrusted to the same branch administering at the prosecutive stage the rest of the body of criminal law." *Id*., at 215.

The defense has only been able to locate two other statutes in Title 18 that require certifications from the Attorney General prior to commencement of a federal criminal prosecution. Both 18 U.S.C. § 245 and § 247 require the Attorney General to certify that "in his judgment a prosecution by the United States is in the public interest and necessary to secure substantial justice" prior to bringing a prosecution under these respective civil rights statutes. But, again, each of these certifications addresses issues of policy. Neither delegate the finding of a mental state to the sole discretion of the Executive.

The required certifications under §§ 245, 247, 1119 and 5032 of Title 18 are classic examples squarely falling within the discretion traditionally accorded to the Executive Branch of government, as represented by its prosecutor. Thus, there is nothing unusual about the Attorney General deciding whether a particular prosecution is 'in the public interest," as required by §§

245 and 247. Likewise, prosecutors have historically decided whether a particular case can and should be prosecuted in an alternative forum and whether there is a "substantial federal interest," as the certification under § 5021 requires. But, while a prosecutor presumably makes a threshold determination that the required mental state can be proven before initiation of any criminal case, § 2332(d) is the only statute that leaves such a determination solely to the prosecutor's discretion and which jettisons the prosecution's burden to <u>actually</u> <u>prove</u> the mental state. The uniqueness is evident - such findings ultimately belong to the trier-of-fact.

Since it cannot reasonably be interpreted as an attempt by the Congress to formalize the Attorney General's exercise of prosecutorial discretion, the question of what exactly § 2332(d) is remains open. As stated, there are two other possibilities - either that the described mental state and motivation of the perpetrator is a jurisdictional prerequisite or, alternatively, that it is an element of the offense.

Whether certain statutory language is jurisdictional or an element of the offense is not always plain. *See United States v. Mena*, 863 F.2d 1522, 1532 (11th Cir. 1986)(acknowledging conflicting Circuit precedents on issue of whether language in 46 U.S.C. App. § 1903 defining vessels subject to jurisdiction of the United States is jurisdictional only or also an element of the offense).[4] In *United States v. Feola*, the Supreme Court considered the issue of whether the

---

[4] The 11th Circuit subsequently held that the issue was both jurisdictional and an element of the offense. *United States v. Medina*, 90 F.3d 459 (11th Cir. 1996). In response, Congress amended the statute to specifically provide that the issue was a preliminary one for the court and not an element of the offense. *See* 46 U.S.C. App. § 1903(f). Congress also amended the statute to provide that a certification by the Secretary of State that consent was obtained from the foreign nation to board the vessel is "conclusive." The 11th Circuit upheld the constitutionality of this amendment in *United States v. Tinoco*, 304 F.3d 1088 (11th Cir. 2002), while noting the issue of jurisdiction was still for the court; *see also United States v. Vilches-Navarrette*, - - F.3d - -, 2008 WL 1009432, at *13-17 (1st Cir. 2008) (discussing the constitutionality of the assignment of the

government must prove as an element of the offense that the defendant knew his victim was a "federal officer" within the meaning of a statute prohibiting assaults on federal officers. In reaching a conclusion that the "federal officer" requirement was jurisdictional only, the Court noted that the "jurisdiction versus element of the offense" label was not determinative and that a statutory requirement may indeed be both.

> Labeling a requirement 'jurisdictional' does not necessarily mean, of course, that the requirement is not an element of the offense. Congress intended to describe and to punish. Indeed, a requirement is sufficient to confer jurisdiction on the federal courts for what otherwise are state crimes precisely because it implicates factors that are an appropriate subject for federal concern. With respect to the present case, for example, a mere general policy of deterring assaults would probably prove to be an undesirable or insufficient basis for federal jurisdiction; but where Congress seeks to protect the integrity of federal functions and the safety of federal officers, the interest is sufficient to warrant federal involvement. The significance of labeling a statutory requirement as 'jurisdictional' is not that the requirement is viewed as outside the scope of the evil Congress intended to forestall, but merely that the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute. The question, then, is not whether the requirement is jurisdictional, but whether it is jurisdictional only.

420 U.S. 671, 676, n. 9 (1975).

Seizing on this language in *Feola*, courts have analyzed the issue in terms of the harm Congress was proscribing and whether it intended to include particular language as a scienter or *mens rea* element applicable to the offense. *See United States v. Winters*, 33 F.3d 720 (6th Cir. 1994)(language in federal "murder for hire" statute prohibiting a person from using or causing another to use the mail in connection with the offense is jurisdictional and not an element of the crime because no evidence that Congress intended a scienter requirement in regard to the use of

---

issue of jurisdiction to the court in prosecutions under the Maritime Drug Law Enforcement Act.).

the mail); *United States v. Schankowski*, 782 F.2d 628, 631 (6th Cir. 1986)("knowingly and willfully" in federal obstruction of mail statute, 18 U.S.C. § 1701, is both jurisdictional and an element of the offense because the circumstance giving rise to federal jurisdiction is inseparable from the prohibited act); *United States v. Gregg*, 612 F.2d 43 (2d Cir. 1979) (statute prohibiting embezzlement from interstate carrier by officers and directors does not require government to prove that aider and abettor knew status of corporate official).

If the statutory requirement is found to be jurisdictional only, the issue is one for the Court to decide. If found to be an element of the offense or both jurisdictional and an element of the offense, then the issue must ultimately be submitted to the jury subject to the reasonable doubt burden. As discussed below, in the context of the § 2332(d) certification, the result is the same. Both the language of § 2332(d) and precedent suggest that "coercion, intimidation or retaliation" is an element of the offense, or at least functionally equivalent to an element, which must therefore be proven beyond a reasonable doubt. But even under the view that the necessary factual predicate is jurisdictional only, the § 2332(d) certification procedure is invalid, as it bypasses the requirement that it is the Court that ultimately determines whether it has jurisdiction. *See In Re Sealed Case*, 131 F.2d at 210.

Mr. Delaema will first discuss the jurisdictional-only view, then address the more logical treatment of the "coercion, intimidation or retaliation" language as required *men rea*.

**II. When Read as a Jurisdictional Prerequisite, § 2332(d) Violates Principles of Both Separation of Powers and Burden of Proof**

"[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998)(citation omitted). As the

9

government is the party invoking the court's jurisdiction in a criminal case, it bears the burden of proof on the issue. *United States v. Tinoco*, 304 F.3d 1088, 1114 (11th Cir. 2002)("[T]he government bears the burden of establishing that the statutory requirements of subject matter jurisdiction. . . have been met."); *United States v. Klimavicious-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998)(government has the burden of proving jurisdictional nexus between United States and alleged criminal conduct) ; *United States v. King*, 781 F. Supp. 315, 316 (D. N.J. 1991)("The United States has the burden of proving that federal jurisdiction exists."); *see also United States v. Vilches-Navarrette*, *supra*, at n. 1.

There are numerous reported cases where courts have dismissed indictments because of the government's inability to establish federal jurisdiction. In a well-known case in this District, Judge Oberdorfer dismissed the indictment based on the fire-bombing of Judge Mize's home and car because the government could not establish that the property had been used "in activities affecting interstate. . . commerce," as required by the federal arson statute, 18 U.S.C. § 844(i). In reaching his conclusion, Judge Oberdorfer noted that "the United States had failed to carry its burden. . . " in regard to the jurisdictional requirement. *United States v. Montgomery*, 815 F. Supp. 7 (D.D.C. 1993). Similarly, in *United States v. Paredes*, 905 F. Supp. 584, 585-86 (S.D.N.Y. 1996), the court dismissed an indictment charging federal "murder for hire" because the government failed to prove the use of a "facility in interstate commerce" (i.e. defendant had neither made nor received interstate telephone calls in furtherance of the scheme), as the statute requires. In dismissing, the court recognized that the government bore the burden of proof, because "[o]nce the existence of subject matter jurisdiction is challenged, the burden of establishing it is always on the party asserting jurisdiction." *Id*., at 586.

The above cases illustrate the manner in which the coordinate three branches of our constitutional form of government operate in the resolution of disputes. More specifically, in the criminal context the Legislature first defines the crime and the court's jurisdiction. The prosecutor as representative of the Executive branch then determines whether to invoke the court's jurisdiction. But, if challenged, it is the judicial branch which decides cases or controversies relating to jurisdiction. Even if read as a jurisdictional requirement and not as a procedure to bypass actual proof of the necessary *mens rea*, § 2332(d) is unconstitutional as it violates the separation of powers inherent in our form of government.

"The Constitution's division of power among the three Branches is violated where one Branch invades the territory of another...". *New York v. United States*, 505 U.S. 144, 182 (1992). The Judiciary's core constitutional function is to be an impartial, independent and final adjudicator of disputes. U.S. Const. art. III. The separation of powers principle is implicated when the actions of another Branch threaten an Article III court's independence and impartiality in the execution of its decision-making function. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). Because the Constitution assigns the different branches different functions, legislation that allows one Branch to usurp functions reserved for another is unconstitutional. *Bowsher v. Synar*, 106 S.Ct. 3181 (1986)(invalidating congressional intrusion on Executive Branch). Thus, neither the Legislative nor Executive Branch may encroach on what is an "inherently" judicial power. *In re Stone*, 986 F.2d 898, 901 (5th Cir. 1993).

The constitutional dichotomy between the roles of the Legislature and Judiciary in the passage and interpretation of laws is well-established:

> The essential balance created by [the separation of powers] was a

> simple one. The legislature would be possessed of power to "prescribe the rules by which the duties and rights of every citizen are to be regulated," but the power of "the interpretation of the laws" would be the proper and peculiar province of the courts.

*Plaut*, 514 U.S. at 222, *citing The Federalist*, No. 81, p. 545 (J. Cooke ed. 1961)).

When read as establishing a necessary jurisdictional prerequisite, § 2332(d) violates separation of powers by allowing the prosecutor to be the arbiter of jurisdictional issues. Neither the court nor a jury has any role. But, unlike the evaluation of policy issues properly left to the exercise of prosecutorial discretion, the determination of jurisdiction is an adjudicative process. The prosecutor invokes the court's jurisdiction by filing the charges, but where an issue is raised, it is the court which must ultimately decide whether it has jurisdiction. If a procedure similar to § 2332(d) had been in place in the above-cited cases where courts dismissed indictments for lack of jurisdiction, each result would have been different, as the prosecutor could have simply "certified" that, for instance, Judge Mize's house and car were used in interstate commerce, irrespective of the evidence. In effect, § 2332(d) grants the Attorney General unfettered, unreviewable and standard-less discretion to declare that black is white - or that day is night. A scheme whereby the prosecutor can simply "certify" adjudicative facts concerning the court's jurisdiction improperly infringes on the role assigned to the Judicial Branch under our tripartite system of government and is therefore unconstitutional.

**III. When Interpreted as an Element of the Offense, § 2232(d) Violates the Due Process Clause of the Fifth Amendment and The Principle That the Government Bears the Burden of Proving Each Element of the Offense Beyond a Reasonable Doubt**

It is not unusual for Congress to define certain conduct as criminal based on whether the intent of the actor was to intimidate or coerce a government or civilian population. *See* 18 U.S.C.

§ 1203 (Hostage-taking statute: "in order to compel a third person or a governmental organization"); 18 U.S.C. § 831(a)(3)(B)(5)(distributing or transporting nuclear materials "with intent to compel any person, international organization, or governmental organization"). The difference between these statutes and § 2332(d) is that the former define the element of coercion or intimidation as an element of the crime – consistent with traditional notions of *mens rea* - that the jury must find beyond a reasonable doubt, while § 2332(d) allows the prosecutor, in his unfettered discretion, to make this determination.[5] This scheme violates Mr. Delaema's due process right to have a jury determine each element of an offense beyond a reasonable doubt and is inconsistent with several Supreme Court decisions.

Without the limitation of subsection (d), a literal reading of § 2332 makes its terms applicable to an assault committed against a national of the United States walking down a street in Paris [assuming an intent to cause serious bodily injury], or the murder of a U.S. national during a bank robbery in Rome. The passive personality theory of jurisdiction under international law[6] allows a sovereign to exercise jurisdiction over crimes committed by non-nationals in foreign countries against its nationals, but has been disfavored as a basis of jurisdiction in this country. *See* Donnelly, *Extraterritorial Jurisdiction Over Acts of Terrorism*

---

[5] For example, in *United States v. Trinidad*, #04-232, a recent hostage-taking prosecution in this district under § 1203, the jury was instructed that one of the elements they needed to find was that the hostages were seized and detained "in order to compel the government of the Republic of Colombia to do certain acts, [N]amely to create a demilitarized zone and/or conduct a prisoner exchange as a condition for the release of the men." Tr. 7-2-07, pm session, at 90.

[6] Under this theory of jurisdiction, a sovereign may enact laws to protect its citizens even when they are outside its territorial sovereignty. As stated, there is no tradition in this country of enacting laws solely on this basis. Thus, ordinary crimes against Americans overseas are not normally cognizable in our courts.

*Committed Abroad*, 72 Cornell L. Rev. 599 (1987).  This Circuit has held that jurisdiction can be established on the passive personality theory of international jurisdiction, as least where the victim was targeted because of nationality.  *United States v. Rezaq*, 134 F.3d 1121, 1133 (1998)("The principle has not been generally accepted for ordinary torts or crimes, but it is increasingly accepted as applied to terrorist and other organized attacks on a state's nationals by reason of their nationality . . .").

Because it was unnecessary to address the issue, *Rezaq* did not endorse the passive personality basis of jurisdiction in the absence of evidence of nationality targeting.[7]  *Rezaq*, 134 F.3d at 1133, n. 6.  The issue of whether, in the absence of express Congressional intent, jurisdiction of a crime against a U.S. national overseas can be grounded in the passive personality theory regardless of nationality targeting of the victim need not be reached here, as it is clear that Congress intended that § 2332 violations require such targeting.  Both the direct language of the certification provisions and the Act's legislative history compel the conclusion that Congress did not intend to abandon the long-standing proposition that ordinary violent crimes committed upon American victims overseas are generally not subject to prosecution in our courts .

> "Simple barroom brawls or normal street crime, for example, are not intended to be covered by this provision.  To ensure that this statute is used only for its intended purpose, it is required that the Attorney General certify that in his judgment such offense was intended to coerce, intimidate, or retaliate against a government or civilian population."

H.R. Conf. Rep. 99-783, 87-88, (Aug.12, 1986), reprinted in 1986 U.S. Code Cong. & Admin. News at 1960-1961.  Thus, it is clear that Congress only intended to criminalize violent crimes

---

[7]Ultimately, this Circuit seems to regard the issue as one of Congressional intent.  *See United States v. Yunis*, 924 F.2d 1086 (D.C. Cir. 1991) (In determining the extraterritorial jurisdiction of a statute to a specific case, a court must look to the intent of Congress).

committed against U.S. nationals overseas by those with a certain *mens rea* - that is by those who intended that their violent acts coerce, intimidate or retaliate against a government or a civilian population. The problem with the attempt to dispense with the *mens rea* requirement by a certification is that it has been traditionally understood in our system that *mens rea* is an element of a criminal offense that must be proven by the prosecution.

The due process clause of the Fifth Amendment requires the prosecution to prove each element of a criminal offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). While legislatures are free to allocate as they see fit the burden of proof on matters not treated as or analogous to elements of the offense, such as affirmative defenses, the Constitution does place limits on the legislature's ability to dictate how elements of criminal offenses are adjudicated. There are obviously constitutional limits beyond which the [legislature] cannot go in this regard." *Patterson v. New Jersey*, 432 U.S. 197, 210 (1977).

In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), a divided 5-4 court held that the due process clause did not prevent the State of Pennsylvania from prohibiting the possession of a weapon and then providing for a minimum mandatory sentence if the judge found at sentencing that the defendant visibly possessed a weapon during a commission of the offense. But a line of cases, beginning with *Jones v. United States*, 526 U.S. 227 (1999), and continuing through *Apprendi v. New Jersey*, *supra, Ring v. Arizona*, 536 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 396 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), have eroded the reasoning, if not the direct holding of *McMillan*. The results in these latter cases were actually foreshadowed by Justice Stevens dissenting opinion in *McMillan* when he noted that the due process clause does not "authorize a State to decide for itself which of the ingredients of the

prohibited transaction are "elements" that it must prove beyond a reasonable doubt. 477 U.S. at 98.

> It would demean the importance of the reasonable-doubt standard -- indeed, it would demean the Constitution itself -- if the substance of the standard could be avoided by nothing more than a legislative declaration that prohibited conduct is not an "element" of a crime . . . Appropriate respect for the rule in *In re Winship* requires that there be some constitutional limits on the power of a State to define the elements of criminal offenses.

Id. at 102-103.

In *Apprendi*, a New Jersey statute provided for an increase of punishment beyond the otherwise applicable maximum upon a finding of a similar intimidation *mens rea* as that found in § 2332(d). The *mens rea* that resulted in the increased sentence in *Apprendi* was the commission of a firearm offense with a purpose to intimidate because of race. As does § 2332(d), New Jersey took the intimidation finding away from the jury and abolished the reasonable doubt burden, by allowing the judge to make the required finding by a preponderance standard. § 2332(d) actually goes much further, allowing the finding to be made by the Attorney General, based on no articulated standard at all. Rejecting New Jersey's argument that the "purpose to intimidate" factor was nothing more than an inquiry into "motive," *Apprendi* held that the language simply expressed a required *mens rea*, which has long been regarded as an element of certain crimes. 530 U.S. at 492-496. Ultimately, the Court held that in determining whether a factor is an element that must be proved beyond a reasonable doubt, "the relevant inquiry is one not of form, but of effect -- does the required finding expose the defendant to a greater punishment. . ." Id. at 494.

Just as did the similar language in *Apprendi*, the "coercion, intimidation, or retaliation"

requirement of § 2331(e) expresses *mens rea* in its most traditional form.  It is clear that Congress meant to require that the criminal actor have the state of mind before it chose to criminalize violent crimes committed against U.S. nationals overseas.  In fact, unlike *Apprendi*, where the criminal act was a violation of the law regardless of the intimidation *mens rea* (which only increased the maximum), under § 2332 the killing of a U.S. national overseas is not even a crime without the required mental state.

The issue presented by § 2332(d) is neither one of statutory construction nor divination of Congressional intent, as it is clear that Congress did not intend that the "coercion, intimidation or retaliation" language be treated as an element of a § 2332 offense to be decided by a jury.  Congress obviously intended that the Attorney General would make that determination.  Rather, the issue is whether the Constitution allows the Attorney General to determine in his unfettered and unreviewable discretion whether the *mens rea* requirement is met.  The answer to this question does not depend solely on the *Apprendi* line of cases.  In fact, the genesis of the unconstitutionality of § 2332(d) is found in several Supreme Court holdings that preceded the *Apprendi-Booker* line and which served as the foundation for the results in those cases.  The Court has long held that the Constitution requires the government to prove each element of a criminal offense beyond a reasonable doubt and has rejected procedural attempts to avoid this requirement.  *See In Re Winship*, 397 U.S. 358 (1970); *Mullaney v. Wilbur*, 421 U.S. 684 (1975); *United States v. Gaudin*, 515 U.S. 506 (1995)(even where element is a mixed question of law and fact).  But the holding of *Apprendi* is nonetheless instructive in assessing the significance of Congress' attempt to withdraw the state-of-mind determination from the trier-of-fact.   Just as neither the New Jersey's legislature's intent in *Apprendi* to define the intimidation *mens rea* as a

sentencing factor, nor the State of Washington's and the Congress' and U.S. Sentencing Commission's intent in *Blakely* and in *Booker*, respectively, to mandate sentences on factual findings not found by a jury were not the last word, Congress' intent to allow the Attorney General to certify the intimidation *mens rea* does not avoid the constitutional inquiry.

In *Gaudin,* the Supreme Court relied on language from its prior decision in *Court of Ulster v. Allen*, 442 U.S. 140 (1979), dealing with the constitutionality of a statutory provision that the presence of a firearm in an automobile was presumptive evidence of its illegal possession by all the occupants. *See* 515 U.S. at 514. In discussing the constitutionality of presumptions or inferences as they impact on the reasonable doubt standard, *Allen* noted:

> Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt."

442 U.S. at 156. The certification "device" chosen by Congress in § 2332(d) fatally undermines the factfinder's responsibility in such a fashion.

**IV.  Conclusion**

Mr. Delaema submits that the Court should enter an Order dismissing Count One and striking the references thereto in Counts Four and Five.

          Respectfully submitted,

          "/s/"
          Robert L. Tucker
          Counsel for Mr. Wesam Al-Delaema
          625 Indiana Avenue, N.W.
          Suite 550
          Washington, D.C.  20004
          (202) 208-7500