## COALITION PROVISIONAL AUTHORITY MEMORANDUM
## NUMBER 3 (REVISED)

### CRIMINAL PROCEDURES

*Pursuant* to my authority as Administrator of the Coalition Provisional Authority (CPA), and under the laws and usages of war, and consistent with relevant U.N. Security Council resolutions, including Resolutions 1483 (2003), 1511 (2003) and 1546 (2004),

*Recognizing* the CPA's obligation to restore law and order, provide for the safety of the people of Iraq, and ensure fundamental standards for persons detained,

*Acting* pursuant to the mandate for the Multinational Force set out in UN Security Council Resolutions 1511 (2003) and 1546 (2004) to take all necessary measures to provide security in Iraq,

*Determining,* that the relevant and appropriate provisions of the Fourth Geneva Convention of 1949 Relative to the Treatment of Civilians in Time of War (hereinafter "the Fourth Geneva Convention") constitute an appropriate framework consistent with its mandate in continuance of measures previously adopted,

*Noting* the deficiencies of the Iraqi Criminal Procedure Code with regard to fundamental standards of human rights,

I hereby promulgate the following:

### Section 1
### Purpose

1) This Memorandum implements CPA Order No.7 by establishing procedures for applying criminal law in Iraq, recognizing that the effective administration of justice must consider:

   a) the continuing involvement of the Multinational Force (MNF) in providing critical support to some aspects of the administration of justice;
   b) the need to transition from this support;
   c) the need to modify aspects of Iraqi law that violate fundamental standards of human rights;
   d) the ongoing process of security internee management in accordance with the relevant and appropriate standards set out in the Fourth Geneva Convention which shall be applied by the MNF as a matter of policy in accordance with its mandate.

CPA/MEM/27 June 2004/03

ATTACHMENT F

## Section 2
## Preservation of Laws

All provisions of the Iraqi Law on Criminal Proceedings of 1971, as amended (hereinafter "the Procedure Code"), shall continue in force unless expressly modified by this Memorandum.

## Section 3
## Suspension and Amendment of Provisions

The following provisions of the Procedure Code shall be suspended and or amended:

a) In paragraph 61 (c) delete the word "may" and insert the word "must". In paragraph 70 delete the words "As far as possible".

b) In paragraph 123 add the following; "(b) Before questioning the accused the examining magistrate must inform the accused that:

   i) he or she has the right to remain silent and no adverse inference may be drawn from accused's decision to exercise that right;
   ii) he or she has the right to be represented by an attorney, and if he or she is not able to afford representation, the Court will provide an attorney at no expense to the accused;

c) The examining magistrate or investigator must determine if the accused desires to be represented by an attorney before questioning the accused. If the accused desires an attorney the examining magistrate or investigator shall not question the accused until he or she has retained an attorney or an attorney has been appointed by the Court."

d) The Criminal Procedure Code is hereby amended as follows:

   i) Paragraph 136 is hereby suspended.
   ii) In paragraph 144 (a) delete the words" at a rate of no less than 10 dinars and no more than 50 dinars, with the cost borne by the state treasury.", and in 144 (b) delete the words "of no more than 50 dinars".
   iii) In paragraph 168 (b) delete the words "via the court".
   iv) In paragraph 184 (a) delete the word "must" and insert the word "may".
   v) In paragraph 199 (a) delete the words "based on permission from the Minister of Justice".
   vi) In paragraph 213 (c) delete the words "and if there is no other evidence which proves it to be a lie."
   vii) In paragraph 218 delete everything in the paragraph after the word "coercion" where occurring for the first time.
   viii) Paragraph 221 is hereby suspended.

ix) Paragraphs 285-293 are hereby suspended.
x) In paragraph 298 delete the words "by one half of one dinar" wherever occurring.
xi) In paragraph 299 (b) delete the words "one day for each one half of one dinar outstanding" and insert in place the words "reduced proportionally to the amount outstanding".
xii) Paragraph 306 is hereby suspended.
xiii) In paragraph 320 delete the words "and with the payment, within a specified period, of surety of not less than 20 dinars and not more than 200 dinars.
xiv) In paragraph 324 delete the words "of no less than 50 dinars and not exceeding 500 dinars".
xv) Paragraph 371 (b) is hereby suspended.

## Section 4
## Advice of Rights

At the time an Iraqi law enforcement officer arrests any person, the officer shall inform that person of his or her right to remain silent and to consult an attorney.

## Section 5
## Criminal Detentions

1) A national contingent of the MNF shall have the right to apprehend persons who are suspected of having committed criminal acts and are not considered security internees (hereinafter "criminal detainees") who shall be handed over to Iraqi authorities as soon as reasonably practicable. A national contingent of the MNF may retain criminal detainees in facilities that it maintains at the request of appropriate Iraqi authorities based on security or capacity considerations. Where such criminal detainees are retained in the detention facilities of a national contingent of the MNF the following standards will apply:

a) Upon the initial induction into the detention centre a criminal detainee shall be apprised of his rights to remain silent and to consult an attorney by the authority serving an arrest warrant.
b) A criminal detainee suspected of a felony offence may consult an attorney 72 hours after induction into the detention centre.
c) A criminal detainee shall be promptly informed, in writing, in a language which they understand, of the particulars of the charges preferred against them by the authority serving an arrest warrant.
d) A criminal detainee shall be brought before a judicial officer as rapidly as possible and in no instance later than 90 days from the date of induction into the detention centre.

e) Access to detainees shall be granted to the Iraqi Prisons and Detainee Ombudsman (hereinafter "the Ombudsman"). Access will only be denied the Ombudsman for reasons of imperative military necessity as an exceptional and temporary measure. The Ombudsman shall be permitted to inspect health, sanitation and living conditions and to interview all detainees in private and to record information regarding a detainee.

f) Access to detainees shall be granted to official delegates of the International Committee of the Red Cross (ICRC). Access will only be denied the delegates for reasons of imperative military necessity as an exceptional and temporary measure. The ICRC delegates shall be permitted to inspect health, sanitation and living conditions and to interview all detainees in private. They shall also be permitted to record information regarding a detainee and may pass messages to and from the family of a detainee subject to reasonable censorship by the facility authorities.

2) Where any criminal detainee held by a national contingent of the MNF is subsequently transferred to an Iraqi Court, a failure to comply with these procedures shall not constitute grounds for any legal remedy or negation of process, but any period spent in detention awaiting trial or punishment shall be deducted from any period of imprisonment imposed.

### Section 6
### MNF Security Internee Process

1) Any person who is detained by a national contingent of the MNF for imperative reasons of security in accordance with the mandate set out in UNSCR 1546 (hereinafter "security internee") shall, if he is held for a period longer than 72 hours, be entitled to have a review of the decision to intern him.

2) The review must take place with the least possible delay and in any case must be held no later than 7 days after the date of induction into an internment facility.

3) Further reviews of the continued detention of any security internee shall be conducted on a regular basis but in any case not later than six months from the date of induction into an internment facility.

4) The operation, condition and standards of any internment facility established by the MNF shall be in accordance with Section IV of the Fourth Geneva Convention.

5) Security internees who are placed in internment after 30 June 2004, must in all cases only be held for so long as the imperative reasons of security in relation to that internee exist and in any case must be either released from internment or

transferred to the Iraqi criminal jurisdiction not later than 18 months from the date of induction into an MNF internment facility. Any person under the age of 18 interned at any time shall in all cases be released not later than 12 months after the initial date of internment.

6) Where it is considered that, for continuing imperative reasons of security, a security internee placed in internment after 30 June 2004 who is over the age of 18 should be retained in internment for longer than 18 months; an application shall be made to the Joint Detention Committee (JDC) for approval to continue internment for an additional period. In dealing with the application the members of the JDC will present recommendations to the co-chairs who must jointly agree that the internment may continue and shall specify the additional period of internment. While the application is being processed the security internee may continue to be held in internment but in any case the application must be finalized not later than two months from the expiration of the initial 18 month internment period.

7) Access to internees shall be granted to the Ombudsman. Access will only be denied the Ombudsman for reasons of imperative military necessity as an exceptional and temporary measure. The Ombudsman shall be permitted to inspect health, sanitation and living conditions and to interview all internees in private and to record information regarding an internee.

8) Access to internees shall be granted to official delegates of the ICRC. Access will only be denied the delegates for reasons of imperative military necessity as an exceptional and temporary measure. The ICRC delegates shall be permitted to inspect health, sanitation and living conditions and to interview all internees in private. They shall also be permitted to record information regarding an internee and may pass messages to and from the family of an internee subject to reasonable censorship by the facility authorities.

9) If a person is subsequently determined to be a criminal detainee following a review of his or her status, or following the commission of a crime while in internment, the period that person has spent in internment will not count with respect to the period set out in Section 5 (2) herein.

10) Where any security internee held by a national contingent of the MNF is subsequently transferred to an Iraqi Court, a failure to comply with these procedures shall not constitute grounds for any legal remedy or negation of process, but may be considered in mitigation of sentence.

## Section 7
## Legal Consultation and Representation

1) With the exception of the circumstances set out in Section 5 (1) (b) all criminal detainees suspected of a felony offense shall have the right to consult with an attorney while in detention.

2) All accused persons appearing before any Iraqi court, including the Central Criminal Court of Iraq, shall have the right to representation by an attorney of their choice. Where an accused person is unable to afford the services of an attorney the Court will provide them with a suitably qualified attorney at no expense to the accused person.

## Section 8
## Entry into Force

This Memorandum shall enter into force on the date of signature.

*[signature]* 6/27/04

L. Paul Bremer, Administrator
Multinational Provisional Authority