IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 05-337 (PLF) |
| v. : | |
| : | |
| WESAM AL DELAEMA, : | |
|   also known as : | |
| WESAM KHALAF CHAYED DELAEME, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
### TO DISMISS COUNT ONE AND TO STRIKE ALLEGATIONS
### OF COUNTS FOUR AND FIVE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes Defendant's Motion to Dismiss Count One and to Strike Allegations of Counts Four and Five of the indictment ("Motion").[1]

In arguing that the Attorney General certification provision of 18 U.S.C. § 2332(d) is unconstitutional, the defendant ignores or minimizes the plain language of the statute, its legislative history and prior precedent rejecting arguments indistinguishable from his own. Despite the defendant's repeated assertions that § 2332(d) sets forth a *mens rea* requirement and/or an element of the offense, the provision actually functions as an appropriate limitation on prosecution – just as Congress plainly intended.

---

[1] Count One charges the defendant with conspiracy to murder United States nationals outside the United States, in violation of 18 U.S.C. § 2332(b). Count One also serves as a predicate crime of violence in Count Four, which charges possession of a destructive device during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and Count Five, which charges a conspiracy to possess a destructive device during a crime of violence, in violation of 18 U.S.C. § 924(o).

I.     **Congress Plainly Intended § 2332(d) to Be a Limitation on Prosecutorial Discretion**

Largely in response to the tragic 1983 Beirut marine barracks bombing, which killed 241 American military service members deployed overseas, legislation was introduced in Congress that eventually resulted in the enactment of 18 U.S.C. § 2332.[2]  *See* 131 Cong. Rec. S18,870 (1985) (statement of Sen. Specter, sponsor of the legislation); 132 Cong. Rec. S2355 (1986) (statement of Sen. Specter).  Congress feared that acts of terrorism like the Beirut bombing would go unpunished simply because prosecutors lacked the necessary statutory authority to charge foreign terrorists for crimes committed against Americans abroad.  *Id.*  As the sponsor of the bill, Senator Arlen Specter stated: "[A] review of current U.S. law revealed that we had no law on the books under which we could try these criminals, even if we caught them."  132 Cong. Rec. S2355.  As a result, Congress desired to enact a law that would give prosecutors the necessary authority to prosecute acts of terrorism committed against U.S. nationals overseas.  At the same time, Congress also wished to ensure that prosecutions under the provision were limited to acts of terrorism.  As the House Conference Report states, "Simple barroom brawls or normal street crime . . . are not intended to be covered by this provision."  H.R. Conf. Rep. No. 99-783, at 87 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1960.

To achieve these two goals, Congress initially considered inserting a terrorism requirement into the text of the offenses criminalized by the statute.  *See* Terrorist Prosecution

---

[2]     The statute that is now codified at 18 U.S.C. § 2332 was originally passed and codified as 18 U.S.C. § 2331.  For the sake of clarity, we will refer to the statute throughout this discussion as § 2332.

Act of 1985, S. 1429, 98th Cong. §2(a) (1985).³  During a hearing held to consider the Terrorist Prosecution Act of 1985 and other bills relating to the prosecution of terrorists, then-Legal Adviser at the Department of State, Abraham Sofaer, testified and noted that the Department of Justice might have concerns "about making it an element of the offense that the deed in question have [*sic*] been done 'in an act of international terrorism.'"  *See Hearing Before the Subcomm. on Security and Terrorism of the Comm. on the Judiciary*, on S. 1373, S. 1429 and S. 1508, 99th Cong. 66, 68 (1985) (Statement of Abraham D. Sofaer, Legal Advisor, Dep't of State).  Judge Sofaer testified that "[t]his requirement could raise evidentiary and constitutional problems that could unduly complicate prosecutions under this legislation." *Id.*  He added that the Department of State believed that "investigatory and prosecutorial concerns deserve careful attention from the Committee" and that a joint State-Justice position on this issue might be developed in the future. *Id.*

---

³     In this earlier version of the bill that eventually became § 2332, Senator Specter had proposed language in each of the substantive offense paragraphs as follows:

> "(a) Whoever <u>in an act of international terrorism</u> kills or attempts to kill any national of the United States shall be punished as provided under section 1111, 1112, and 1113 of this title, except that any such person who is found guilty of murder in the first degree shall be sentenced to imprisonment for life, and any person who is found guilty of attempted murder shall be imprisoned for not more than twenty years.
>
> (b) Whoever <u>in an act of international terrorism</u> assaults, strikes, wounds, imprisons, or makes any other violent attack upon the person or liberty of any national of the United States in any foreign country or in international waters or air space, or, if likely to endanger his or her person or liberty, makes violent attacks upon his or her official premises, private accommodation, or means of transport, or attempts to commit any of the foregoing, shall be fined not more than $5,000 or imprisoned not more than three years, or both. . . ."

Terrorist Prosecution Act of 1985, S. 1429, 99th Cong. § 2(a) (1985) (emphasis added).

As a result, Congress ultimately decided to limit prosecutorial discretion by way of a certification requirement. As the legislative history of the statute states, "To ensure that this statute is used only for its intended purpose, [the statute] requires that the Attorney General certify that in his judgment such offense was intended to coerce, intimidate, or retaliate against a government or a civilian population." H.R. Conf. Rep. 99-783, at 87, *reprinted in* 1986 U.S.C.C.A.N. 1960. In enacting the certification requirement of subsection (d) of 18 U.S.C. § 2332, Congress sought to ensure that prosecutors would focus their resources on offenses that constituted acts of international terrorism – *i.e.*, acts targeted at governments or civilian populations. The final wording and structure of 18 U.S.C. § 2332 make this intent plain. 18 U.S.C. § 2332 contains the following charges:

> **(a) Homicide.**– Whoever kills a national of the United States, while such national is outside the United States, shall –
>
>> (1) if the killing is murder (as defined in section 1111(a)), be fined under this title, punished by death or imprisonment for any term of years or for life, or both;
>>
>> (2) if the killing is a voluntary manslaughter as defined in section 1112(a) of this title, be fined under this title or imprisoned not more than ten years, or both; and
>>
>> (3) if the killing is an involuntary manslaughter as defined in section 1112(a) of this title, be fined under this title or imprisoned not more than three years, or both.
>
> **(b) Attempt or conspiracy with respect to homicide.**– Whoever outside the United States attempts to kill, or engages in a conspiracy to kill, a national of the United States shall–
>
>> (1) in the case of an attempt to commit a killing that is a murder as defined in this chapter, be fined under this title or imprisoned not more than 20 years, or both; and

>   (2) in the case of a conspiracy by two or more persons to commit a killing that is a murder as defined in section 1111(a) of this title, if one or more of such persons do any overt act to effect the object of the conspiracy, be fined under this title or imprisoned for any term of years or for life, or both so fined and so imprisoned.
>
>   **(c) Other conduct.–** Whoever outside the United States engages in physical violence—
>
>   (1) with intent to cause serious bodily injury to a national of the United States; or
>
>   (2) with the result that serious bodily injury is caused to a national of the United States;
>
>   shall be fined under this title or imprisoned not more that ten years, or both.

Section 2332 is a list of three offenses, each with its own required conduct and intent. None of these offenses is dependent on subsection (d). Indeed, subsection (d) is not referenced in subsections (a), (b) or (c). As written, § 2332(d) is simply a restraint on the use of prosecutorial power:

>   **(d) Limitation on prosecution.** No prosecution for any offense described in this section shall be undertaken by the United States except on written certification of the Attorney General or the highest ranking subordinate of the Attorney General with responsibility for criminal prosecutions that, in the judgment of the certifying official, such offense was intended to coerce, intimidate, or retaliate against a government or a civilian population.

The language of the statute could not be more clear. Subsection (d) is described as a "limitation on prosecution" of the "offense[s]" described in subsections (a) through (c). The prudential limitation in subsection (d) does not establish an additional element to the offenses created in subsections (a) through (c). Instead, the subsection narrows the broad range of cases that the executive would otherwise be authorized by the plain language of § 2332 to pursue. *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("so long as the prosecutor has probable cause

to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion"). In enacting subsection (d), Congress ensured that prosecutorial resources would be focused on those offenses deemed by the executive to constitute acts of international terrorism.

II.     **Section 2332(d) Does Not Describe a *Mens Rea* Requirement**

As the defendant acknowledges, § 2332(d) is one of a handful of other certification provisions established in Title 18 of the U.S. Code. *See* Motion at 3-7 (citing 18 U.S.C. §§ 245, 247, 1119(c) and 5032). No court has ever held that any of these certification provisions was unconstitutional nor that any of these provisions constituted an element of the underlying offense. The defendant concedes that "[c]learly, Congress did not intend that § 2332[(d)] would be treated as an element of the criminal offense which must be proved beyond a reasonable doubt." Motion at 3; *see also id.* at 17. Nonetheless, the defendant argues that § 2332(d) establishes an element of the offense and the defendant then offers various theories as to why § 2332(d) is unconstitutional. Upon examination, all of the defendant's arguments rest on the same faulty premise – that § 2332(d) sets forth the required *mens rea* for the offense. The fact that the defendant incants the phrases "*mens rea*" and "mental state" in virtually every page of his Motion does not transform the certification requirement of § 2332(d) into an element of the offense.

One need only read the plain statutory language of § 2332 to discern the necessary *mens rea* for each listed offense. Section 2332(a)(1) explicitly incorporates by reference the elements of 18 U.S.C. § 1111(a) and, accordingly, shares the same *mens rea* standard as any other federal

murder offense.[4]  *Accord United States v. White*, 51 F. Supp. 2d 1008, 1013 & n.4 (E.D. Cal. 1997) (construing similar provisions in 18 U.S.C. § 1119 and referring to similar provisions in 18 U.S.C. § 1114).  Likewise, §§ 2332(a)(2) & (3) each incorporate by reference the elements of 18 U.S.C. § 1112(a) and, accordingly, each requires the same showing of *mens rea* as any other federal prosecution for voluntary manslaughter and involuntary manslaughter, respectively.[5]  Similarly, § 2332(b)(2) explicitly refers to "a conspiracy by two or more persons to commit a killing that is a murder as defined in section 1111(a) of this title."  Indisputably, proof of this offense requires the same *mens rea* as any other federal prosecution for conspiracy to commit

---

[4]  The *mens rea* required for murder in the first degree is set forth in the statutory language:

> Murder is the unlawful killing of a human being <u>with malice aforethought</u>.  Every murder perpetrated by poison, lying in wait, or any other kind of <u>willful</u>, <u>deliberate</u>, <u>malicious</u>, and <u>premeditated</u> killing . . . .

18 U.S.C. § 1111(a) (emphasis added).

[5]  The *mens rea* required for voluntary and involuntary manslaughter is set forth in the statutory language:

> Manslaughter is the unlawful killing of a human being <u>without malice</u>.  It is of two kinds:
>
> Voluntary – Upon a sudden quarrel or <u>heat</u> <u>of</u> <u>passion</u>.
>
> Involuntary – In the commission of an unlawful act not amounting to a felony, or in the commission in an unlawful manner, or <u>without</u> <u>due</u> <u>caution</u> <u>and</u> <u>circumspection</u>, of a lawful act which might produce death.

18 U.S.C. § 1112(a) (emphasis added).

murder.[6] Finally, § 2332(c)(1) sets forth its own mental state requirement: "intent to cause serious bodily injury to a national of the United States." Accordingly, the defendant's hyperbolic claim that § 2332(d) "jettisons the prosecution's burden to actually prove the mental state" of a defendant, Motion at 7 (emphasis in original), should be firmly rejected.

Despite the defendant's strained and repeated attempts to characterize § 2332(d) as a *mens rea* standard, the section actually serves to fulfill Congress's clearly expressed policy objectives – *i.e.*, that the executive branch should invoke the statute to prosecute extraterritorial "terrorism" offenses, not "barroom brawls or normal street crime." *See* H.R. Conf. Rep. No. 99-783, at 87, *reprinted in* 1986 U.S.C.C.A.N. 1960. Congress limited prosecutorial discretion by providing the Attorney General with its definition of a terrorism offense – namely, that "the offense was intended to coerce, intimidate, or retaliate against a government or a civilian population." 18 U.S.C. § 2332(d). Indeed, when Congress subsequently adopted a definition of "international terrorism" for purposes of federal law, it used the language from § 2332(d) as a model. *See* 18 U.S.C. § 2331(1).[7]

---

[6]  *See* Leonard Sand et al., Modern Fed. Jury Instructions: Criminal § 19.01 (2007) (Instruction 19-3: Elements of Conspiracy) (requiring that a charge of criminal conspiracy be supported by a finding that the conspirators entered an unlawful agreement, the defendant knowingly or willfully became a member of the conspiracy, at least one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment, and the over acts were committed to further some element of the conspiracy) (emphasis added).

[7]  As defined in 18 U.S.C. § 2331(1):

> the term "international terrorism" means activities that –
>
> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

Most significantly, § 2332(d) does not direct the Attorney General to focus on the state of mind of any specific offender. Rather, in making the policy determination (or "judgment," in the language of the statute) whether an act of terrorism has occurred warranting the invocation of § 2332, the Attorney General is directed to focus on whether "the *offense* was intended" to accomplish certain ends that Congress has equated with a terrorist motive. (Emphasis added.) This inquiry into the motivation behind an offense is notably different from the concept of *mens rea*, which necessarily is specific to an individual defendant. *See, e.g., United States v. Snow*, 670 F.2d 749, 754 n.9 (7th Cir. 1982) ("Now let's not mix up intent and motive. They are two different concepts. And they shouldn't be confused. Motive is what prompts a person to act or fail to act. Intent refers only to the state of mind with which the act is done or omitted."); *Sutro Bros. & Co. v. Indemnity Ins. Co.*, 264 F. Supp. 273, 288 (S.D.N.Y. 1967) ("In the popular mind intent and motive are not infrequently regarded as one and the same thing. In law there is a clear distinction between them. Motive is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result.") (citation and internal quotations omitted); *People v. Sabin*, 463 Mich. 43, 68 (2000) ( "A motive is the inducement for

---

    (B) appear to be intended –
        (i) to intimidate or coerce a civilian population;
        (ii) to influence the policy of a government by intimidation or coercion; or
        (iii) to affect the conduct of a government by mass destruction, assassination, or kidnaping; and

    (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

doing some act; it gives birth to a purpose.") (citation and internal quotations omitted).[8]

### III. Defendant's Constitutional Challenges to § 2332(d) Should Be Rejected

Once the fallacy of the defendant's premise is exposed, his constitutional challenges are easily dismissed, particularly in light of the precedent rejecting his arguments.

#### A. The Attorney General's Certification Does Not Remove an Element of the Offense from the Jury

Repeating his claim that the certification provision of § 2332(d) is an element of the offense, the defendant argues that the provision unconstitutionally takes the determination of an accused's *mens rea* away from the jury. Motion at 12-18. This precise argument was rejected by the Second Circuit in *United States v. Yousef*, 327 F.3d 56, 116-18 (2d Cir. 2003).[9] In *Yousef*, defendant Ramzi Yousef had been convicted under 18 U.S.C. § 2332 for his involvement in a conspiracy to bomb United States commercial airliners in Southeast Asia. *Id.* Yousef appealed

---

[8] Of course, it is well established that motive need not be proved at trial. *See, e.g., United States v. Hirschberg*, 988 F.2d 1509, 1515 (7th Cir. 1993) ("[m]otive is not an essential element of a crime"); *Harrison v. Dahm*, 880 F.2d 999, 1002 n.3 (8th Cir. 1989) ("motive is not an essential element of the crime of 1st Degree Murder"); *McGhar v. Koehler*, 811 F.2d 606 (6th Cir. 1986) ("Motive is never an essential element of a crime."); *see also* 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 3.6 (1986).

[9] Although not giving rise to a published opinion, the same argument made by defense counsel here was also rejected by Judge Huvelle in *United States v. Francois Karake et al.*, Cr. No. 02-256 (ESH). In that case, the defendants were charged with three substantive acts of international terrorism: conspiracy to commit murder under 18 U.S.C. § 2332(b) (Count One) and the murders of two Americans abroad under 18 U.S.C. §§ 2332(a)(1) and 1111(a) (Counts Two and Three). Each of these three counts was therefore subject to the certification provision of § 2332(d). The fourth and final count in that case was a weapons charge under 18 U.S.C. § 924(c), using the other three counts as predicate crimes of violence. As reflected in the docket report for that case, on October 30, 2003, defendant Karake filed a motion to dismiss the indictment under *Apprendi v. New Jersey* (docket entry #86) and, on January 5, 2004, Judge Huvelle issued an order denying that motion (docket entry #101).

and argued that § 2332(d) unconstitutionally removed an element of the offense from consideration by the jury, *see Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000), and, as a result, Yousef argued that the district court erred in failing to charge the jury with finding intent to retaliate against the United States and its citizens as an element of the crime. *Yousef*, 327 F.3d at 117-18. The Second Circuit, however, concluded that subsection (d) "does not comprise an element of the offenses proscribed by § 2332." *Id.* at 117. In making this determination, the court deferred to Congress's intent as evidenced by the structure of statute, as well as the "limit on prosecution" language in subsection (d). *Id.* at 117-18.[10]

    *Yousef* was correct to hold that the certification provision of 18 U.S.C. § 2332(d) does not create the functional equivalent of an element of the offense that must be submitted to the jury. *Apprendi* ruled that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum [except for a prior conviction] must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 466. The certification provision of § 2332(d) does not function as an element of the offense under *Apprendi* because it does not increase the statutory maximum for the offenses described in subsections (a) through (c). *Cf. United States v. Wharton*, 320 F.3d 526, 534-35 (5th Cir. 2003) (concluding that determination under certification provision of § 1119 "does not increase the maximum sentence for the crime of foreign murder"). Indeed, the offenses of murder, voluntary manslaughter, involuntary manslaughter, attempted

---

[10]    The defendant argues in a footnote that *Yousef*'s holding should be rejected, in part, because it preceded the Supreme Court decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) (ruling that *Apprendi* applied to Washington state sentencing guidelines), and *United States v. Booker*, 543 U.S. 220 (2005) (ruling that *Apprendi* applied to United States Sentencing Guidelines). Motion at 2, note 1. However, other than stating that these subsequent cases "have expanded on and have given even more impetus to the *Apprendi* argument," *id.*, the defendant offers no argument as to how *Blakely* and *Booker* undermine the holding of *Yousef*.

murder and conspiracy to murder a U.S. national outside the United States under § 2332(a) and § 2332(b) share either the same penalties as, or lesser penalties than, the corollary federal offenses of murder, voluntary manslaughter, involuntary manslaughter, attempted murder and conspiracy to murder under 18 U.S.C. §§ 1111 and 1112.[11]

Moreover, despite the defendant's attempt to distinguish it, the Fifth Circuit's decision in *Wharton* fully supports the constitutionality of the certification provision of § 2332(d). *Wharton* involved a constitutional challenge to the certification requirement in 18 U.S.C. § 1119, which criminalizes the foreign murder of United States nationals by United States nationals. *Wharton*, 320 F.3d at 532-33.[12]  The defendant in *Wharton* first argued that the Attorney General's

---

[11]     For murder in the first degree under § 1111, the penalty is either death or mandatory imprisonment for life; murder in the second degree is punishable by any term of years or for life. 18 U.S.C. § 1111(b). Murder under § 2332(a)(1) is punishable by death or imprisonment for any term of years or life. Thus, a defendant convicted of first degree murder under § 2332(a)(1) is eligible for a sentence less than life imprisonment, unlike a defendant convicted of murder in the first degree under § 1111(a). Voluntary manslaughter is punishable by up to 15 years under § 1112(b), but by only ten years under § 2332(a)(2). Involuntary manslaughter is punishable by up to eight years under § 1112(b), but by only three years under § 2332(a)(3). An attempt to commit murder is punishable by up to 20 years under both § 1113 and § 2332(b)(1). A conspiracy to commit murder – *i.e.,* the relevant offense with which the defendant is charged here – is punishable by any term of years or life under both § 1117 and § 2332(b)(2). Thus, the defendant here is not subject to any additional potential punishment on account of the Attorney General's certification under § 2332(d) as compared to any other federal defendant charged with conspiracy to commit murder.

[12]     Title 18, United States Code, section 1119(c) provides:

> (1) No prosecution may be instituted against any person under this section except upon the written approval of the Attorney General, the Deputy Attorney General, or an Assistant Attorney General, which function of approving prosecutions may not be delegated. No prosecution shall be approved if prosecution has been previously undertaken by a foreign country for the same conduct.
>
> (2) No prosecution shall be approved under this section unless the

determination created "an essential element of the crime of foreign murder," which, in turn, created a "factual issue for which proof must be introduced and a factual determination made." *Id.* at 533. In rejecting this argument, the Fifth Circuit looked to the structure of 18 U.S.C. § 1119, which separates the enumerated offenses from the subsection that limited prosecutions. *Id.* at 533. The court stated that the limitation on prosecutions was equivalent to "the general exercise of prosecutorial discretion." *Id.* at 533-34. The court then concluded that "the statutory structure suggests that Congress intentionally separated the Attorney General's prosecutorial decisions from the elements of the crime." *Id.* at 534. Significantly, after discussing *Apprendi* and progeny, the court concluded that the determination under the certification provision of § 1119 "does not increase the maximum sentence for the crime of foreign murder." *Id.* at 534-35. The court's analysis in *Wharton* is entirely consistent with the holding in *Yousef* and *Wharton*'s logic concerning § 1119(c) applies equally to the certification provision of § 2332(d).

   The defendant here attempts to distinguish *Wharton* by pointing to its language stating that the certification process in § 1119 "does not involve the resolution of a question of fact, but rather a complicated determination of fact and law combined with prosecutorial considerations." 320 F.3d at 534. Predictably, the defendant invokes the same premise that underlies his entire brief – *i.e.*, that § 2332(d) requires the Attorney General to certify the "existence of a factually-driven *mens rea* predicate to prosecution." Motion at 3. In fact, as is discussed above and as is

---

> Attorney General, in consultation with the Secretary of State, determines that the conduct took place in a country in which the person is no longer present, and the country lacks the ability to lawfully secure the person's return. A determination by the Attorney General under this paragraph is not subject to judicial review.

evident from the statutory language and the legislative history, Congress intended the certification provision of § 2332(d) to be a means to fulfill its stated policy objective that the executive would prosecute an offense under 18 U.S.C. §§ 2332(a), (b) or (c) only if the Attorney General could certify that the offense was an act of international "terrorism," under the definition provided in § 2332(d).  This certification does not involve mere fact-finding by the Attorney General, but "judgment," as stated in § 2332(d).  The Attorney General is not directed to look at the state of mind of any individual offender but to determine whether the "offense" was intended to accomplish any of the terrorist motivations set forth in the provision.  Notably, the statute does not limit the Attorney General to a consideration only of admissible evidence.  Thus, the Attorney General is permitted to consider the full range of available evidence and intelligence concerning the operation of terrorist groups overseas and other relevant factors in making the determination whether to certify a particular offense as an act of terrorism under § 2332(d).  In sum, the certification provision of § 2332(d) is no less a combination of fact, policy and prosecutorial discretion than the certification provision of § 1119(c) or those of the other federal certification provisions.

      **B.**      **The Absence of Judicial Review of the Attorney General's Certification Does Not Violate the Separation of Powers**

The defendant also purports to make a separation of powers argument, based on a reading of § 2332(d) as a jurisdictional prerequisite.  *See* Motion at 9-12.  The government does not concede that § 2332(d) is a jurisdictional prerequisite.[13]  Regardless, the defendant's argument is

---

    [13]    Significantly, the Supreme Court and other courts have found that procedural statutes setting filing deadlines, including those involving executive branch certifications, are not jurisdictional in nature.  *See Eberhart v. U.S.*, 546 U.S. 12, 15-19 (2005) (Fed. R. Crim. P. 33(a) filing deadline for motion for new trial is not "jurisdictional," but rather claim-processing rule);

nothing more than a re-hash of an argument rejected by the D.C. Circuit in *In Re Sealed Case*, 131 F.3d 208, 214-16 (D.C. Cir. 1997), where the defendant claimed that a jurisdictional prosecutorial certification provision must be subject to judicial review.[14]

*Sealed Case* involved a juvenile defendant's interlocutory appeal from an order in the district court denying his motion to dismiss for lack of jurisdiction. *Id*. at 209. The U.S. Attorney had made the required certification of a "substantial federal interest" under 18 U.S.C. § 5032,[15] and the district court had upheld that certification, but only after making its own substantive review of the U.S. Attorney's certification, over the vigorous objection of the

---

*United States v. McNeill*, 484 F.3d 301, 309 (4th Cir. 2007) (failure to file timely certification under 18 U.S.C. § 3731 does not deprive appellate court of jurisdiction, but court has discretion to impose sanction against government, including dismissal of appeal); *United States v. Bookhardt*, 277 F.3d 558, 562-63 (D.C. Cir. 2002) (same). *But see John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750, 753-56 (2008) (U.S. Court of Federal Claims jurisdictional limitation in 28 U.S.C. § 2501, requiring that claims be barred from being brought in court unless petition is filed within six years of claim accrual, is of "absolute nature").

[14]    Although the certification provision of § 2332(d) does not on its face include language addressing the question of judicial review of a certification decision, the use of language referring to "the judgment of the certifying official" and the absence of any standards for judicial review strongly imply that it is the type of determination not subject to such review. Moreover, in the legislative history of the statute, Congress stated that the Attorney General's certification decision would be "final and not subject to judicial review." H.R. Conf. Rep. No. 99-783, at 88, *reprinted in* 1986 U.S.C.C.A.N. 1961.

[15]    Section 5032 provides, in relevant part, that a juvenile

> shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to the appropriate district court of the United States that . . . (3) the offense charged is a crime of violence that is a felony . . . and that there is a substantial Federal interest in the case or the offense to warrant the exercise of Federal jurisdiction.

18 U.S.C. § 5032.

government. *Id.* The D.C. Circuit, as part of a discussion about whether an interlocutory appeal was appropriate, first held that the certification provision of § 5032 was jurisdictional. *Id.* at 211. Significantly, the jurisdictional nature of the provision did not lead the D.C. Circuit to conclude that the determination was judicially reviewable. Rather, the D.C. Circuit noted that the statutory provision "does not explicitly provide for judicial review of a certification, nor does it provide articulable standards that a court can use to evaluate the exercise of the prosecutor's discretion." *Id.* at 212 (internal quotations and citations omitted).

After rejecting or distinguishing other precedents cited by the juvenile defendant, the D.C. Circuit turned to a discussion of the separation of powers. The court cited well-established Supreme Court precedent in stating: "In the ordinary case, the exercise of prosecutorial discretion, at the very core of the executive function, has long been held presumptively unreviewable." *Id.* at 214. The court continued: "The decision to invoke the power of the federal government and the criminal jurisdiction of federal courts rests peculiarly within the province of the Executive. . . . The decision to certify that a particular case involves a 'substantial federal interest' implicates the core prosecutorial discretion vested in the Attorney General and her delegates." *Id.*

In response to the juvenile defendant's argument that judicial review of the Attorney General's certification was required, the D.C. Circuit determined that such an argument "assume[s] that only judges can discern the meaning of statutes, a view that is at odds with our three-part constitutional structure." *Id.* at 215. The court continued: "[T]here is every reason to assume that this policy-laden decision is properly entrusted to the same branch administering at the prosecutive stage the rest of the body of criminal law." *Id.* In language that, like the rest of

16

its discussion in *Sealed Case*, was equally applicable to the certification provision of § 2332(d), the D.C. Circuit concluded: "There is nothing nugatory about congressional efforts to provide guidance to the Executive directly via statutory language. Not every such effort gives rise to a justiciable question." *Id.*

The defendant's argument here that "§ 2332(d) violates separation of powers by allowing the prosecutor to be the arbiter of jurisdictional issues," Motion at 12, flies in the face of the language and reasoning of the D.C. Circuit's holding in *Sealed Case*. To the contrary, the principle of separation of powers would be violated if the policy-laden certification decision of § 2332(d) were subjected to judicial review.[16]

## IV.   Conclusion

Thus, there can be no dispute that § 2332(d) is nothing more than exactly what it states it is: a limitation on prosecutorial discretion. It does not describe a *mens rea* requirement, and thus does not remove an element of the offense from the jury. Moreover, the Attorney General's exercise of his prosecutorial discretion, which was entrusted by Congress to him and not subject to judicial review, does not violate the separation of powers doctrine. Accordingly, the certification requirement contained in § 2332(d) is plainly constitutional.

WHEREFORE, the government respectfully requests that the Defendant's Motion to Dismiss Counts One and to Strike Allegations in Counts Four and Five be DENIED.

---

[16]   In support of his separation of powers argument, the defendant also cites two cases that are clearly inapposite, as they both involved judicial findings that the government failed to introduce sufficient proof of an element of the offense. *See* Motion at 10, 12 (citing *United States v. Montgomery*, 815 F. Supp. 7 (D.D.C. 1993), and *United States v. Paredes*, 905 F. Supp. 584, 585-86 (S.D.N.Y. 1996)). As discussed above, the certification provision of § 2332(d) is simply not an element of the offense.

                Respectfully submitted,

                JEFFREY A. TAYLOR
                UNITED STATES ATTORNEY
                D.C. Bar No. 498610

By:     /s/_____
                GREGG A. MAISEL
                Assistant United States Attorney
                D.C. Bar No. 447902
                (202) 514-7746
                Gregg.Maisel@usdoj.gov

                RACHEL CARLSON LIEBER
                Assistant United States Attorney
                D.C. Bar No. 456491
                (202) 353-8055
                Rachel.Lieber@usdoj.gov

                CAROLINE D. KRASS
                Special Assistant United States Attorney
                D.C. Bar No. 453506
                (202) 514-5623
                Caroline.Krass2@usdoj.gov

                National Security Section
                555 Fourth Street NW, 11th Floor
                Washington, DC 20530

                DAVID I. MILLER
                Trial Attorney
                (202) 353-2440
                David.Miller@usdoj.gov
                N.Y. Bar # 2959369
                Counterterrorism Section
                U.S. Department of Justice
                10th & Constitution Avenue, N.W.
                Washington, D.C. 20530[17]

Dated: July 10, 2008

---

[17] The undersigned counsel wish to thank Duncan Roberts, J.D. candidate August 2008, George Washington University Law School, for his assistance in the legal research and cite-checking of this brief.