IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 05-337 (PLF) |
| v. : | |
| : | |
| WESAM AL DELAEMA, : | |
|   also known as : | |
| WESAM KHALAF CHAYED DELAEME, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COUNTS FOUR AND FIVE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes Defendant's Motion to Dismiss Counts Four and Five of the indictment ("Motion").

Count Four charges the defendant with possession of a destructive device during a crime of violence, in violation of 18 U.S.C. § 924(c). Count Five charges the defendant with conspiring to possess a destructive device during a crime of violence, in violation of 18 U.S.C. § 924(o). Each count relies on three predicate crimes of violence: (1) conspiracy to murder United States nationals outside the United States, in violation of 18 U.S.C. § 2332(b)(2), as set forth in Count One; (2) conspiracy to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(1) & (3), as set forth in Count Two; and (3) conspiracy to maliciously damage or destroy U.S. government property by means of an explosive, in violation of 18 U.S.C. §§ 844(f)(2) & (n), as set forth in Count Three.

The defendant argues that Counts Four and Five should be dismissed "because Congress did not intend that § 924(c) should apply extraterritorially." Motion at 1. The defendant's argument ignores the plain language of § 924(c), the purpose of the statute and the holdings of

every court to have considered the issue.

I. **The Language and Purpose of § 924(c) Make Clear Its Extraterritorial Applicability**

Consistent with well-established case law, the D.C. Circuit has stated that courts should "presumptively read the text of congressional statutes not to apply extraterritorially, unless there are contextual reasons for reading the text otherwise." *United States v. Delgado-Garcia*, 374 F.3d 1337, 1344 (D.C. Cir. 2004). "[C]ourts should consider all available evidence about the meaning of the statute, *e.g.*, its text, structure, and legislative history." *United States v. Bin Laden*, 92 F. Supp. 2d 189, 193 (S.D.N.Y. 2000) (internal quotations and citations omitted). As the defendant states, in considering the question of whether a statute has extraterritorial application, a court "'must apply the canons of construction to interpret, not rewrite, congressional acts.'" Motion at 3 (quoting *Delgado-Garcia*, 374 F.3d at 1344).

The defendant boldly claims that "[a]n examination of § 924(c) suggests that any attempt by the government to overcome the presumption against extraterritorial application by resort to its plain language will be futile." Motion at 4. Despite this claim, the defendant flatly ignores the plain language of § 924(c) which, in relevant part, states that "<u>any</u> person who, during and in relation to <u>any</u> crime of violence . . . for which the person <u>may</u> <u>be</u> <u>prosecuted</u> <u>in</u> <u>a</u> <u>court</u> <u>of</u> <u>the</u> <u>United</u> <u>States</u>, uses or carries a firearm, or who, in furtherance of <u>any</u> <u>such</u> <u>crime</u>, possesses a firearm, shall, in addition to the punishment provided for such crime of violence" be punished in accordance with the penalty provisions of the statute. 18 U.S.C. § 924(c)(1)(A) (emphasis added).

Surely, Congress is presumed to know that "any crime of violence . . . for which the person may be prosecuted in a court of the United States" includes crimes with extraterritorial

2

application as well as those applying only within the territorial jurisdiction of the United States. The defendant does not contest that the offenses charged in Counts One, Two and Three of the indictment are crimes of violence for which a person may be prosecuted in a court of the United States. *Cf. United States v. Lindh*, 212 F. Supp. 2d 541, 579-80 (E.D. Va. 2002) (providing material support to a foreign terrorist organization overseas in violation of 18 U.S.C. § 2339B is a crime of violence within the meaning of § 924(c)); *United States v. Khan*, 309 F. Supp. 2d 789, 823 (E.D.Va. 2004) (conspiracy to violate Neutrality Act, levy war against the United States, supply services to the Taliban, and provide material support in violation of 18 U.S.C. § 2339B, at least some of which activities occurred overseas, are crimes of violence under § 924(c)). Nor does the defendant contest that the offenses charged in Counts One, Two and Three each have extraterritorial application. *Cf. United States v. Emmanuel*, Case No. 06-20758-CR-ALTONAGA, 2007 U.S. Dist. LEXIS 48510, at *35 (S.D. Fla. July 5, 2007) ("If the predicate offense is one that 'may be prosecuted in a court of the United States,' by its plain language, the Firearms Statute may be applied. There is nothing in the Firearms Statute to suggest that the locale where the predicate offense takes place is in any way material to whether or not the statute applies."). Yet the defendant asks this Court to ignore the unambiguous language of § 924(c) and to rewrite that statute to apply to "any crime of violence . . . for which a person may be prosecuted in a court of the United States," except those with extraterritorial application.[1]

---

[1] In a footnote, the defendant dismisses the relevant statutory language as "boilerplate terminology" and, amazingly, asserts that it "has no particular significance as to the issue of whether a legislature intends its laws to apply outside the sovereign's normal jurisdiction." Motion at 7, n.5.

This straightforward application of the statutory language is consistent with the purpose of the statute. As the Supreme Court explained in *Simpson v. United States*, 435 U.S. 6, 10 n.4 (1978), "the overriding purpose of § 924(c) was to combat the increasing use of guns to commit federal felonies." Thus, when the legislation that became § 924(c) was initially introduced by Congressman Poff as a floor amendment to H.R. 17735, then known as "The State Firearms Control Assistance Act of 1968," he explained that the purpose of the mandatory minimum sentence that it authorized was "to persuade the man who is tempted to commit a Federal felony to leave his gun at home. Any such person should understand that if he uses his gun and is caught and convicted, he is going to jail." 114 Cong. Rec. H22,231 (1968). In view of that objective, it is inconsequential whether a predicate federal crime of violence is territorial or extraterritorial in nature. In either event, the use of a firearm in connection with such an offense – wherever such use may occur – seriously exacerbates the gravity of the offense and its consequent risks. "If the Firearm Statute were read, as Defendant urges, to apply only to offenses that occur within the United States, the statute's effectiveness would be substantially diminished." *Emmanuel*, 2007 U.S. Dist. LEXIS 48510, at *37 n.7.

**II.    Invoking Well-Recognized Principles, Courts Have Unanimously Concluded that § 924(c) Applies Extraterritorially**

"[A] statute that is ancillary to a substantive offense statute will be presumed to have extraterritorial effect if the underlying substantive statute is first determined to have extraterritorial effect." *Bin Laden*, 92 F. Supp. 2d at 197. This principle regarding ancillary offenses has been applied by courts in many contexts. *See, e.g., United States v. Hill*, 279 F.3d 731, 739-40 (9th Cir. 2002) (finding that harboring statute applied extraterritorially because

4

underlying child support statue applied extraterritorially); *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1204-06 & n.3 (9th Cir. 1991) (finding that accessory after the fact statute applied extraterritorially because underlying murder and kidnaping statutes applied extraterritorially); *Chua Han Mow v. United States*, 730 F.2d 1308, 1311-12 (9th Cir. 1984) (attempt and conspiracy statutes applied extraterritorially because underlying drug smuggling statute applied extraterritorially).

Not surprisingly, this ancillary offense principle has repeatedly been invoked by courts to conclude that § 924(c) applies extraterritorially. *See, e.g., United States v. Reumayr*, 530 F. Supp. 2d 1210, 1219 (D.N.M. 2008) (ruling that § 924(c) could be applied extraterritorially because the charge was ancillary to attempted bombings charges); *Emmanuel*, 2007 U.S. Dist. LEXIS 48510, at *33-38 (ruling that § 924(c) could be applied extraterritorially because the charge was ancillary to torture charges); *Bin Laden*, 92 F. Supp. 2d at 201 (concluding that, because predicate offenses of 18 U.S.C. §§ 844(f)(1) & (f)(3) were intended by Congress to apply extraterritorially, ancillary offense of § 924(c) likewise applies extraterritorially).

Other courts considering the extraterritorial application of § 924(c) have reached the same conclusion using the same logic without explicitly invoking the ancillary offense principle. *See, e.g., United States v. Yousef*, 927 F. Supp. 673, 682-83 (S.D.N.Y. 1993) (holding that, because the charges of use and carrying of bombs "arise directly from" the extraterritorial conspiracy charges, the weapons charges apply extraterritorially as well), *aff'd,* 327 F.3d 56 (2d Cir.), *cert. denied*, 124 S. Ct. 353 (2003).[2]

---

[2] Although not giving rise to a published opinion, the same argument made by defense counsel here was rejected by Judge Huvelle in *United States v. Francois Karake et al.*, Cr. No. 02-256 (ESH). In that case, the defendants were charged with three substantive acts of

Yet another principle that supports the extraterritorial application of § 924(c) arises from the case of *United States v. Bowman*, 260 U.S. 94, 98 (1922). In *Bowman*, the Supreme Court held that there was an exception to the general presumption against extraterritoriality for "criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction[] or fraud wherever perpetrated." *Id.* The *Bowman* case has been widely invoked and applied by courts throughout the years to conclude that various criminal statutes apply extraterritorially. *See Bin Laden*, 92 F. Supp. 2d at 194-95 (collecting cases in which *Bowman* has been invoked to apply a criminal statute to actions by foreign nationals on foreign soil). In *Bin Laden*, Judge Sand distilled the *Bowman* principles as follows:

> *Bowman* rests on two factors: (1) the right of the United States to protect itself from harmful conduct – irrespective of the locus of this conduct, and (2) the presumption that Congress would not both (a) enact a statute designed to serve this protective function, and – where the statute proscribes acts that could just as readily be performed outside the United States as within it – (b) undermine this protective intention by limiting the statute's application to United States territory.

*Bin Laden*, 92 F. Supp. 2d at 194.

In applying this *Bowman* principle in another extraterritorial terrorism case, the Second Circuit in *Yousef* stated that "if Congress intended United States courts to have jurisdiction over the substantive crime of placing bombs on board the aircraft at issue, it is reasonable to conclude

---

international terrorism: conspiracy to commit murder under 18 U.S.C. § 2332(b) (Count One) and the murders of two Americans abroad under 18 U.S.C. §§ 2332(a)(1) and 1111(a) (Counts Two and Three). Count Four charged a violation of 18 U.S.C. § 924(c), the unlawful brandishing and discharging of firearms during and in relation to a crime of violence. As reflected in the docket report for that case, on October 30, 2003, defendant Karake filed a motion to dismiss Count Four (docket entry #85) and, on December 19, 2003, Judge Huvelle denied that motion.

that Congress also intended to vest in United States courts the requisite jurisdiction over an extraterritorial conspiracy to commit that crime." *United States v. Yousef*, 327 F.3d 56, 87-88 (2d Cir. 2003).

In light of these various precedents and principles, it is hardly surprising that every court to consider the issue has held that § 924(c) applies extraterritorially.[3]

### III. The Authorities Cited by the Defendant Are Inapposite

In support of his argument that Counts Four and Five should be dismissed, the defendant relies primarily on three cases: *Small v. United States*, 544 U.S. 385 (2005); *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345-47 (D.C. Cir. 2004); and *United States v. Yakou*, 428 F.3d 241 (D.C. Cir. 2005). Motion at 5-11. None of these cases, however, can support his conclusion.

*Small* involved a dispute regarding the proper interpretation of 18 U.S.C. § 922(g)(1), which, in part, prohibits the sending or receiving of firearms and ammunition by an individual who has been convicted "in any court" of a crime punishable by imprisonment for a term exceeding one year. The central legal dispute in the case was whether the term "convicted in any court" applies to convictions entered in foreign courts. *Small*, 544 U.S. at 387. The Supreme Court assumed that Congress intended that the phrase "convicted in any court" should apply domestically, not extraterritorially, but also stated that it stood "ready to revise this assumption should statutory language, context, history, or purpose show the contrary." *Id.* at 390-91. After examining these factors, including the fact that "foreign convictions differ from domestic

---

[3] By application of the same principles discussed above, § 924(o), which prohibits a conspiracy to violate § 924(c), likewise clearly applies extraterritorially.

convictions in important ways," *id.* at 389, the Court ultimately held that the term "any court" encompassed only domestic courts. *Id.* at 390-94.

Clearly, the unremarkable holding in *Small* does nothing to support the defendant's Motion. As the defendant concedes, the case did not deal with extraterritorial conduct at all. Motion at 6. Rather, the Court decided whether a term in a statute should be given a global interpretation. The case reiterated the undisputed legal principle that there is a general presumption against extraterritorial application of statutes that can be overcome by statutory language, context, history, or purpose. *Small* sheds no light whatsoever on the statutory language, context, history or purpose of § 924(c).

In *Delgado-Garcia*, three defendants attempted to challenge their convictions under 8 U.S.C. § 1324(a) for attempting to bring illegal Ecuadorian aliens into the United States. The defendants argued that their convictions were invalid because the statute did not apply extraterritorially to their conduct. The D.C. Circuit rejected this argument, concluded that the statute was international in focus and, therefore, held that the statute applied extraterritorially. *Delgado-Garcia*, 374 F.3d at 1345-47. The court relied heavily on *Bowman* in support of its holding. *Id.* In other words, *Delgado-Garcia* fully supports the government's argument here in favor of extraterritoriality. *Delgado-Garcia* is entirely consistent with the notion that the court should examine the text, context and purpose of § 924(c), as well as the principles of *Bowman*, in determining that Congress intended the statute to have extraterritorial application, as demonstrated above.

Finally, the defendant cites *United States v. Yakou*, 428 F.3d 241 (D.C. Cir. 2005). In *Yakou* – which involved a prosecution under the Arms Export Control Act (AECA) and its

8

implementing regulation, the International Traffic in Arms Regulation (ITAR) – the D.C. Circuit held, in relevant part, that the aiding and abetting statute "is not so broad as to expand the extraterritorial reach of the underlying statute." *Id.* at 252.  In its decision, the D.C. Circuit cited favorably the line of cases, including *Yousef*, supporting the proposition that the aiding and abetting statute should be given the same extraterritorial application as the underlying offense. *Id.* at 252.  Critical to the decision in *Yakou,* however, was the legislative history indicating that the relevant ITAR provisions were intended to apply extraterritorially only to "U.S. persons," and Yakou was deemed not to be a U.S. person.  *Id.* at 247-53.

There is a stark contrast between the crucial legislative language at issue in *Yakou* and that at issue here.  In *Yakou,* the legislative history indicated that, in regard to brokering activities outside the United States, only "U.S. persons" were covered by the ITAR provisions.  Here, in contrast, § 924 explicitly applies to "any crime of violence . . . for which the person may be prosecuted in a court of the United States."  18 U.S.C. § 924(c).  *Yakou*'s holding concerning different statutory and regulatory language can be of no avail to the defendant's attempt to gloss over the plain language of § 924(c).

## IV. Conclusion

The plain language of § 924(c), the purpose of the statute, well-established legal principles and the holdings of every court to have considered the issue, as far as we are aware, all firmly support the extraterritorial application of § 924(c) and, by extension, § 924(o).

WHEREFORE, the government respectfully requests that the Defendant's Motion to Dismiss Counts Four and Five be DENIED.

                    Respectfully submitted,

                    JEFFREY A. TAYLOR
                    UNITED STATES ATTORNEY
                    D.C. Bar No. 498610

By:     /s/_____
                    GREGG A. MAISEL
                    Assistant United States Attorney
                    D.C. Bar No. 447902
                    (202) 514-7746
                    Gregg.Maisel@usdoj.gov

                    RACHEL CARLSON LIEBER
                    Assistant United States Attorney
                    D.C. Bar No. 456491
                    (202) 353-8055
                    Rachel.Lieber@usdoj.gov

                    CAROLINE D. KRASS
                    Special Assistant United States Attorney
                    D.C. Bar No. 453506
                    (202) 514-5623
                    Caroline.Krass2@usdoj.gov

                    National Security Section
                    555 Fourth Street NW, 11th Floor
                    Washington, DC 20530

                    DAVID I. MILLER
                    Trial Attorney
                    (202) 353-2440
                    David.Miller@usdoj.gov
                    N.Y. Bar # 2959369
                    Counterterrorism Section
                    U.S. Department of Justice
                    10th & Constitution Avenue, N.W.
                    Washington, D.C. 20530[4]

Dated: July 10, 2008

---

[4] The undersigned counsel wish to thank Duncan Roberts, J.D. candidate August 2008, George Washington University Law School, for his assistance in the legal research and cite-checking of this brief.